BARHAM, Justice.
A Third Circuit Court of Appeal judgment affirmed the trial court’s award of $5000.00 in damages based upon a holding that Gulf States Utilities Company, which had acquired a servitude over the plaintiffs’ land in 1949, had trespassed upon the property of the plaintiffs in 1962 by modification of the supporting structure of an electric power line. 210 So.2d 345.
In 1949 plaintiffs’ ancestor in title granted to Gulf States Utilities Company the following servitude:
“ * * * the right, privilege and servitude to enter upon and to erect, construct, extend, maintain, inspect, operate, replace, remove, repair, and patrol one w saer-e lines of poles, frames or towers, which may be erected simultaneously or at some future time, with lines of wires, cross-arms, guy wires, conduits, stubs, and other usual fixtures, appliances, and appurtenances used or adapted for the transmission of electricity, electric energy and power for any and all purposes *949 for which electricity, electric energy and power is now or may hereafter be used, and for telephone and telegraph use, together with all necessary foundations, anchors and braces properly to support the same upon, over and across a strip of land ■out of the following described tract * *.” (Deletion of the words “or more” and of the “s” on the word “lines” occurs in the ■original document.)
According to an agreed stipulation upon which the case was submitted, Gulf States constructed, on the center line described in the servitude agreement, one line of poles spaced 300 feet apart, with attached cross-arms, wires, and the usual fixtures and appurtenances, over which it strung the lines for one 69,000-volt circuit. Without change except for the usual maintenance and repairs, electric energy was transmitted over the one circuit on this construction until January, 1962. Between January and May of 1962 Gulf States replaced the “single pole line” and erected an “H-frame line”. An H-frame consists of double poles connected by a crossarm, and is so named because of its. resemblance of the letter “H”. One of the poles of each H-frame rested on the .center line, and the other was placed 20 feet to one side of, and at right angle to, the center line. These double-pole structures, or H-frames, were approximately 450 feet apart. An additional circuit of 138,000 volts was strung with the original 69,000-volt circuit to form part of the transmission line between two stations operated by Gulf States.
The parties to this suit have 'limited the trial issues as well as our review by the following provision of the agreed stipulation :
“The Servitude Grant conferred upon Gulf States the right to erect, construct, maintain and operate the ‘H-Frame’ line, and this proceeding solely involved the question of whether such right has been lost by the liberative prescription of ten years for failure to have so erected, constructed, maintained and operated said ‘Hi-Frame’ Line within 10 years from the date of the Servitude Grant. * * *”[1]
(Emphasis supplied.)
*951 The trial court found for the plaintiffs, basing its judgment upon Civil Code Article 798 [2] and reasoning that single-pole construction was a less extensive enjoyment of the right given in defendant’s title and that the servitude was accordingly reduced to that extent by prescription. The Court of Appeal in affirming apparently rejected the trial court’s reasoning and applied Articles 789 and 796 [3] on the theory that the defendant had been granted three modes of use of the servitude — i. e., (1) poles, (2) frames, (3) towers — , and that the right to construct H-frames had prescribed by non-usage for 10 years.
Most important to a consideration of the narrow issue before us is an understanding of what constitutes a servitude. While a servitude places an onus or burden upon an estate, it is created only for the purpose of producing a benefit, utility or advantage for another estate or person in whose favor it is granted. La.Civ.Code Arts. 646 et seq. “It is necessary * * * that the servitude have for its object the use or benefit of the estate in favor of which it is established.” (Emphasis supplied.) La. Civ.Code Art. 650.[4]
To determine and define the servitude granted to Gulf States we must examine the title to ascertain what benefit, advantage or use it gave to the beneficiary. Gulf States’ title was granted “ * * *953 for the transmission of electricity, electric energy and power * * * ”.[5] Obviously the grantee expected to benefit from and enjoy the servitude by using the servient estate in its system of transmitting electrical energy for “ * * * all purposes for which electricity * * * is now or may hereafter be used”. The construction of “poles, frames or towers” was not the servitude granted by the title. The “poles, frames or towers”, of and by themselves, produced no benefit to the grantee, and the construction of these structures in great number and of every nature and kind would not be a realization of the servitude granted under this title. Not until electric power or energy was transmitted over and across the servient estate did the grantee derive any benefit or use, although the poles were constructed in anticipation of that eventual utility and service.
The right to construct poles, frames or towers is simply one of the accessory rights provided within the grant of servitude. The right to transmit electric power is the servitude. “Poles, frames or towers” cannot transmit electricity and are merely types of supporting structure for transmission lines or other transmitting devices. “Poles, frames or towers” are not modes of use, nor do they constitute three different servitudes as contended by plaintiffs’ argument.[6] Therefore the construction and maintenance within 10 years of only one of three types of structure named in the grant will not result in loss by Iterative prescription of the right to construct another of these types of structure.
Although it is not argued that the trial judge’s reasoning was correct, out of an abundance of caution we simply state that Article 798 of the Civil Code has no application to this case.
By stipulation the parties have asked the narrow question: Has the right originally conferred upon Gulf States to construct an H-frame line been lost by failure to erect such a line within 10 years from the date of the servitude grant? Our answer is negative, and therefore there was no trespass.
The judgment of the Court of Appeal is reversed and set aside, and the suit is dismissed. Plaintiffs are cast for all costs.

. Many provocative arguments and issues, some of which are not even raised by argument, are removed from consideration by this stipulation. For example, plaintiffs raise in argument the Question whether the grant of servitude contains a description of the area or breadth of land subject to the servitude. However, since it is stipulated that the grant permitted the construction, at the inception of the servitude and for 10 years thereafter, of the H-frame structures now complained of, it must follow that there was sufficient description of breadth to encompass this construction. The issue of whether the H-frame construction is a more onerous or burdensome use of the servient estate is also made moot by the stipulation. Interesting but not under consideration is the import of the striking out of the words “or more” and of the “s” on the word “lines” to make the singular word “line”.

. Article 798 provides: “If, on the contrary, the owner has enjoyed a right less extensive than is given him by his title, the servitude, whatever be its nature, is reduced to that which is preserved by possession during the time necessary to establish prescription.”

. Article 789 reads: “A right to servitude is extinguished by the non-usage of the same during ten years.”
Article 796 states:
“The mode of servitude is subject to prescription as well as the servitude itself, and in the same manner.
“By mode of servitude, in this ease, is understood the manner of using the servitude as is prescribed in the title.”

. Servitude means a charge or burden resting upon an estate for the benefit or advantage of another, and the land of the servient estate serves another estate or person. Black’s Law Dictionary (De-, Luxe ed. 1944). In the civil law, servitude is “ * * * a right which subjects a land or tenement to some service, for the use of another land or tenement, which belongs to another master * * 1 Domat, The Civil Law in Its Natural Order § 1018 (Strahan tr. 1861). “The charge established upon one of the estates should benefit the other. Servitudes were devised to add to the utility of certain properties.
« * *
“The Italian Code (Art. 531) uses the same language as the Drench Code [Art. 637]. It says: ‘per l'uso e I'utilita di un fondo.’ The Spanish Code (Art. 530) states, in general terms, that the servitude is established upon an immovable in favor (en beneficio) of another. The German Code says that the predial servitude can consist only in a charge that presents an element of utility for the use of the dominant estate (Art. 1019).” 1 Pt. 2 Planiol, Treatise on the Civil Law (Louisiana State Law Inst, tr. 1959) § 2884, pp. 698-699.
Louisiana Civil Code Article 647 provides : “A real or predial servitude is a *953 charge laid on an estate for the use and utility of another estate belonging to another owner.” (Emphasis supplied.)

. The title also was granted “for telephone and telegraph use”.

. Both plaintiffs and defendant agree that “poles, frames or towers” are not modes of use. The plaintiffs say at p. 10 of , their brief: “ * * * Those we submit are not modes or methods of use. They are different servitudes * * In defendant’s brief it is stated at p. 14. « « * * And hence we say that it was erroneous for the appellate court to conclude, as it did, that the electric line servitude had different modes of use merely because different types of supporting structures (differing in detail only) could have been used.”