337 So.2d 1070 (1976)
Ronald C. McGUIRE
v.
CENTRAL LOUISIANA ELECTRIC COMPANY, INC.
No. 57567.
Supreme Court of Louisiana.
September 13, 1976.
*1071 Jake Shapiro, Alexandria, for plaintiff-applicant.
Richard E. Lee, Holt, Wagner & Lee, Pineville, for defendant-respondent.
DENNIS, Justice.
On August 10, 1971, plaintiff, Ronald C. McGuire, filed suit against defendant, Central Louisiana Electric Company, Inc., hereinafter Cleco, for damages sustained through Cleco's alleged wrongful cutting and trimming of trees on his property. Cleco held a conventional servitude on plaintiff's lot extending five feet within the property and paralleling plaintiff's southern property line. On February 23, 1971, Cleco, through Meador Contracting Company of Louisiana Inc., hereinafter Meador, a subcontractor working under a Cleco work order, cleared a ten-foot strip within plaintiff's south property line. Three trees within the servitude were cut; three trees outside the servitude were cut; and the foliage on the south side of three other trees, also outside the servitude, was removed. Portions of plaintiff's property outside the servitude were scarred by ruts left by the subcontractor's equipment, and the six unsightly stumps were not removed.
The trial court dismissed plaintiff's claim at his costs, ruling that Cleco had a broad right to cut and trim trees threatening its power lines under its right-of-way agreement, and that in any event, the cutting had been done by an independent contractor, over which Cleco had no control and for which Cleco was not responsible. The Third Circuit Court of Appeal found the exact location of the agreed right-of-way uncertain, but assumed that "a marginal encroachment" occurred. That court affirmed the trial court's dismissal with one judge dissenting, based on its conclusion that, notwithstanding the limited right-of-way granted Cleco by plaintiff's ancestor in title, by virtue of La.Civil Code article 771, Cleco acquired "the right to trim trees and shrubbery located off of the right-of-way proper." We granted writs, and, for the reasons hereinafter stated, reverse.
The Right-of-Way Permit acquired from plaintiff's ancestor in title, in pertinent part, authorized Cleco:
"* * * [T]o cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric line or system *1072 and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.
"It is understood and agreed that the Right-of-Way and easement hereby granted [one half of which is located on plaintiff's property] is 10 feet in width."
A conventional servitude established by title is governed principally by the intention of the parties. Article 709 of the Louisiana Civil Code provides that owners of land may establish "such servitudes as they deem proper," subject to public policy limitations, and that where servitudes are established by title,
"The use and extent of servitudes thus established are regulated by the title by which they are granted, * * *."
See also, La.C.C. arts. 748, 774; 1 M. Planiol, Traite elementair de droit civil (La.St. L.Inst. transl. 1959), No. 2964; Yiannopoulos, Predial Servitudes; Creation by Title; Louisiana and Comparative Law, 45 Tul.L. Rev. 459, 494 (1971) and cases cited therein.
The contract in the instant case expressly limits the width of the present servitude to ten feet, and in our opinion is not ambiguous. The contractual language delineating the servitude follows the language authorizing its holder to cut and trim vegetation and by its position indicates the parties' intention that these accessory rights be exercised only within the servitude boundaries.
The construction given the right-of-way agreement by the majority of the court of appeal would, in effect, delete the restriction on the width of the servitude and thus disregard the intention of the parties. Therefore, the decision below was contrary to codal principles and, as the dissenting judge aptly pointed out, would produce an anomalous result:
"* * * [A]n owner can no longer expressly limit the extent of a conventional servitude. The servitude will be expanded to whatever a `reasonable' limit may be. * * *"
Even if one were to consider the right-of-way agreement ambiguous, which we do not, instruments purporting to establish predial servitudes "in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected." La. C.C. art. 753; McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960); Boudreaux v. Landry, 120 So.2d 535 (La.App. 1st Cir. 1960). Thus, any doubts should be resolved in favor of the plaintiff in this case.
The majority of the court of appeal fell into error when it followed Sticker v. Southern Bell Telephone and Telegraph Company, 101 So.2d 476 (La.App. 1st Cir. 1958) and applied only articles 771-72 of the La.Civil Code to the facts of this case. These articles provide:
"Art. 771. When a servitude is established, everything which is necessary to use such servitude is supposed to be granted at the same time with the servitude.
"Thus the servitude of drawing water out of a spring carries necessarily with it the right of passage.
"But the passage, in this case and in all others in which it is permitted as an accessory to some other servitude, must be made in the way the most direct, the shortest, and the least inconvenient to the estate subject to the servitude."
"Art. 772. He to whom a servitude is due, has a right to make all the works necessary to use and preserve the same."
Sticker involved a right-of-way established, not by title, but through appropriation by the utility under the now defunct St. Julien Doctrine. See St. Julien v. Morgan L. & T.R. Co., 35 La.Ann. 924 (1883) overruled prospectively by Lake v. Louisiana Power & Light Co., 330 So.2d 914 (La. 1976). In Sticker the court of appeal ruled that, by virtue of accessory rights granted the holder of a servitude by La.Civil Code articles 771-72, the telephone company was entitled to clear trees and shrubs to a distance of six feet on either side of the center line of the servitude, because that action was reasonable and necessary to the servitude's continued usefulness.
The majority below failed to note that Sticker did not involve a servitude established *1073 by title. In the absence of an expressed agreement between the parties, and based on the circumstances of that case, the twelve foot wide clearance area approved by Sticker as necessary to use the telephone line servitude, did not represent an unreasonable application of articles 771-72. However, in the present case, because of the contract between the parties limiting the width of the right-of-way the court was required to give heed not only to articles 771-72, but also articles 709, 748, 753 and 774 which, as we explained above, required the court to restrict the area of the servitude to that intended by the parties as stated in the instrument.
We cannot agree with the court of appeal majority's finding that "[t]he exact location of the right-of-way * * * is not clear from the record * * *." As the dissenting judge in the court below observed,
"* * * A surveyor employed by McGuire [plaintiff] testified * * * that he located CLECO's transmission line `right along the south line of Lot 10 (rear of McGuire's property).' The R/W instrument grants a ten foot R/W affecting the rear five feet of McGuire's property and five feet off his neighbor's lot. * * *"
Furthermore, the conclusion of the trial court that Cleco could not be liable for the acts of its subcontractor is manifestly erroneous. The record establishes that Cleco in its work order to Meador, directed that a ten-foot area along the south side of plaintiff's property be cleared, although this work order was not made part of the record. At the same time, the conventional right-of-way held by Cleco entitled it to clear trees and shrubs only within five feet of the plaintiff's property line. The record nowhere suggests that Cleco was unaware of the limits of its servitude. To the extent Cleco instructed its subcontractor to clear more property than it was entitled to clear, Cleco became liable for its use of the servitude in an unauthorized and unreasonable manner. La.Civil Code articles 771, 774. Cf. Duet v. Louisiana Power & Light Company, 169 F.Supp. 184 (E.D.La.1958).
The servitude granted Cleco carries as an accessory right under La.Civil Code article 771, an accessory right not expressly limited by the terms of the contract, reasonably to enter upon the servient estate to cut and trim trees and shrubs within the specified width of the servitude proper. An adjunct to this right is the obligation to repair, insofar as reasonably possible, the damage caused by that entry. Louisiana Power & Light Company v. Ristroph, 200 So.2d 14, 25 (La.App. 1st Cir. 1967), writ refused 251 La. 39, 202 So.2d 654 (1967). In this case it would extend to removal of the stumps and repair of the ruts left by Meador's machinery.
Plaintiff is thus entitled to recover for the three trees improperly removed by Cleco's subcontractor; for the cost of removing the six stumps left by the subcontractor; and for the cost of repairing the ruts left by the subcontractor's machinery.[*] Costs and expert fees should be assessed against the defendant. Because they are neither provided for in the contract establishing the servitude nor by law, plaintiff is not entitled to recover attorney's fees as damages. See Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1959). Accordingly, this Court must remand to the court of appeal for determination of the quantum of damages to which plaintiff, on the basis of the record, is entitled.
For the reasons assigned, this cause is reversed and remanded to the Court of Appeal, Third Circuit, for further proceedings, consistent with this opinion.
NOTES
[*] Contrary to the implication left by the court of appeal opinion in its footnote 1, plaintiff's failure to file an assignment error concerning this item of damages does not prevent the court from granting relief. La.C.C.P. arts. 2129, 2164.