352 So.2d 305 (1977)
LAKE FOREST, INC., Pati-Four and the Ground Pat'i, Inc.
v.
Edward R. DRURY and C. Reese Owen, Jr., a/k/a Clarence Reese Owen, Jr.
No. 8461.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1977.
Rehearings Denied December 13, 1977.
Montgomery, Barnett, Brown & Read, Omer F. Kuebel, Jr. and Patrick J. Browne, New Orleans, for Lake Forest, Inc., plaintiff-appellant.
Reuter & Reuter, J. Richard Reuter, Jr., New Orleans, for The Ground Pat'i, Inc., plaintiff-appellant.
Edward R. Drury, New Orleans, Clark A. Richard, Metairie, for Edward R. Drury, defendant-appellee.
Before SAMUEL, REDMANN and BOUTALL, JJ.
SAMUEL, Judge.
By this suit the plaintiffs, Lake Forest, Inc., the owner and the lessee of commercial property, seek injunctive relief to enforce a building restriction in the chain of title in defendants' property. The defendants answered, denying plaintiffs' right to injunctive relief.
Following trial of the rule for a preliminary injunction, there was judgment denying and dismissing the rule. Plaintiffs have appealed.
The properties involved are located in New Orleans on the eastern side of Read Boulevard to the north of U.S. Interstate Highway 10. They are zoned for commercial use and are contiguous. The northernmost *306 lot was purchased by the plaintiff, Pati-Four, who then leased the lot to a restaurant known as The Ground Pat'i, Inc. The restaurant building was constructed on the lot with a setback of 50 feet from the Read Boulevard property line, the first 50 feet of the property being used for parking purposes.
Approximately a year and four months later, defendants acquired the adjoining lot (to the south of the Ground Pat'i). About a week after that acquisition, defendants began construction of a shopping center building, a part of which extended to the front property line. Thus, defendants' building removes the view of the Ground Pat'i Restaurant from traffic proceeding in a northbound direction on Read Boulevard because the restaurant is set back 50 feet further than defendants' shopping center building.
This suit is based on a building restriction placed on a large 6-acre tract of land by plaintiff, Lake Forest, Inc., in a sale to Joseph M. Rault and Stanley D. Fejta on December 29, 1972. Both lots involved in this case were later subdivided from the parcel originally sold by Lake Forest, Inc. In the sale by Lake Forest to Rault and Fejta, the following building restriction was placed upon all of the property:
"No building or structure shall be erected or placed on the property herein conveyed until the construction plans and specifications and a plan showing the location of the building or structure have been approved by the Seller as to quality of workmanship and materials, harmony of external design, location with respect to topography and finished grade elevation. In the event Seller fails to approve or disapprove within 30 days after plans and specifications have been submitted to it, or in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof, approval of the Seller will not be required. This provision shall constitute a convenant running with the land and may be enforced by proceedings in law or equity against any person or persons violating this covenant, either to restrain any violation or to recover any damages by the Seller and its successors and assigns."
The record indicates defendants were not notified of any disagreement with their building plan until after construction had begun. Following such notification, defendant Drury met with a representative of Lake Forest, Inc., presented plans and specifications for approval on June 15, 1976, and Lake Forest expressed no objection to them at that time. Defendants continued construction, but they later received a letter and a telegram dated July 12, 1976 from Lake Forest advising them a setback would be required from the property line. A meeting was again arranged, and after some time elapsed after that meeting, defendants were advised by Lake Forest, Inc. they would be required to have their building set back 25 feet from the property line or the plans would not be approved.
Plaintiffs concede there has never been a Louisiana case approving a building restriction drafted in a similar manner to the one in suit.[1] They rely on various decisions from common law jurisdictions which have upheld such a restriction. However, in Louisiana building restrictions similar to common law restrictive covenants have been consistently regarded as a form of predial servitude.[2] These restrictions are interpreted and enforced under the provisions of the Civil Code relating to servitudes, and they are subject to the same limitations as civil law servitudes. In order to be valid and enforceable, a building restriction must comply with the provisions of the Civil Code.
Article 753 of the Louisiana Civil Code reads:
"Servitudes which tend to affect the free use of property, in case of doubt as to their extent of the manner of using them, are always interpreted in favor of the owner of the property to be affected." LSA-C.C. Art. 753.
*307 In McGuffy v. Weil,[3] the Supreme Court recognized the limitations on the incumbrance of property with building restrictions as follows:
"The law favors the free and unrestrained use of immovable property. It follows that any doubt as to the interpretation of a servitude encumbering property must be resolved in favor of the property owner. LSA-Civil Code, Article 753. The intention of the proprietor to establish a servitude must clearly appear from the title document."
The building restriction in suit provides that no building shall be erected until its plans have been approved by Lake Forest, Inc. "as to quality of workmanship and materials, harmony of external design, location with respect to topography and finished grade elevation." A reading of the restriction will show there are no tests, guidelines or other standards by which Lake Forest, Inc. is obliged to guide itself in the granting or withholding approval. While uniformity of development and compatibility of improvements in an area have been regarded as legitimate concerns of a developer and purchasers buying from the developer, Louisiana has never permitted the enforcement of vague and indefinite restrictions which do not set forth the limitations placed on the use of property.
In Murphy v. Marino,[4] the court said:
"It is our understanding of the law that in order to create a binding covenant running with the land in a subdivision, and enforceable by any purchaser of property therein, there should be a uniform plan of restriction applicable to the subdivision as a whole, or to a particular part of the subdivision known to each purchaser and thereby by reference, or implication, forming a part of his contract with the subdivider."
The vague wording of the restriction in question cannot be squared with Louisiana's policy of favoring the free and unrestrained use of immovable property or with the requirement that building restrictions should be known to each purchaser in order to form a part of his contract with the subdivider. Here, the wording of the restriction is so vague and ambiguous it constitutes a reservation in favor of Lake Forest, Inc., to dictate to any future purchaser of the property precisely what he can build thereon on penalty of not being able to build at all.
This conclusion is emphasized by the present controversy. There is no provision whatever in the restriction regarding building setbacks from the property line. Should such a restriction have been important to the developers it should have been placed in the building restriction where buyers could have seen and considered it prior to making purchases in the area subject to the restriction. Under the present wording, the effective development of the land subject to the restrictions could be postponed indefinitely while a potential builder continued time after time to submit new and different plans and specifications for the approval of the developer. Without some guidelines stated in the restriction, a potential builder has no way of ascertaining what, if anything, the developer would approve or disapprove. Such a restriction is indeed too burdensome and inhibits the free use and development of immovable property.[5]
The record further discloses Lake Forest, Inc. did not establish any machinery for the approval of plans and specifications submitted to it prior to construction. The only persons who ostensibly possess authority to approve or reject such plans are two officers of Lake Forest, who appear never to have been authorized by any specific board of directors resolution to exercise this power. Howard Beck, the president of Lake Forest, Inc., stated at the trial he regarded that authority as his in his capacity as president of the company. Moreover, neither board of directors resolution nor executive *308 policy has set forth any standard or guidelines by which applications for approval of plans and specifications would be judged.
In addition, Mr. Beck testified he considered standards and restrictions imposed on surrounding tracts of ground, but not imposed upon defendants' lot, in order to arrive at a decision regarding the setback from the property line. Because building restrictions are strictly construed in favor of the free use of immovable property, this testimony demonstrates the wisdom of not enforcing a building restriction worded in such a vague and ambiguous manner as the one in suit. Without standards or guidelines, the developer has carte blanche to sell the property and at the same time maintain dictatorial control over its use and development. If such a result has been approved in other states, it is contrary to the meaning and spirit of our law and, as such, unenforceable in Louisiana.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] Compare Community Builders, Inc. v. Scarborough, La.App., 149 So.2d 141.
[2] See, for example, Camelot Citizens Association v. Stevens, La.App., 329 So.2d 847.
[3] 240 La. 758, 125 So.2d 154.
[4] La.App., 60 So.2d 128.
[5] See Community Builders, Inc. v. Scarborough, La.App., supra, note 1.