BARRY, Judge.
This dispute arises out of an act of sale in 1952 wherein Illinois Central Railroad (ICRR) sold several parcels of land and created two servitudes. The servitudes were in favor of Louisiana Power and Light Company (LP&L) for a transmission line and to enter and cut trees and shrubs on each side of the power line. The property, situated in Jefferson Parish, was subsequently conveyed to plaintiff-appellee, La-Salle Properties, Inc. (LaSalle), a subsidiary of ICRR.
LP&L’s two servitudes cover (1) a thirty foot wide strip of land (fifteen feet on each side of the transmission line) reserved for “the construction, maintenance, repair and renewal of a power transmission line” together with (2) “the right to enter upon and cut trees and shrubs” on thirty-five feet on each side of the thirty foot center strip.

*575

There is no dispute that LaSalle acquired title subject to the two servitudes granted to LP&L, nor that LaSalle has all of the rights reserved by the original grantor.
After describing the servitudes, paragraph (d) of the agreement states the following: “. . . reserving unto grantor, Illinois Central Railroad Company, the right to construct track or other facilities as in paragraph (i) hereof provided.”
Paragraph (i) provides:
“(i) The Grantor, Illinois Central Railroad Company, reserves unto itself the right not only to continue the presence and use of all tracks and other railroad operating facilitites now existing upon or beneath the surface of, or above, the above described premises, but also the right to install and operate additional railroad tracks and operating facilities upon and beneath the surface of and above the above described premises, and the Grant- or further reserves the right to grant to others permission to install underground pipes and conduits and other structures beneath the surface of said permises and overhead wires, cables and poles or other structures for the support thereof which may be presently or hereafter located thereon, provided that the installations aforesaid may be made without interference with the use of said permises as herein provided, and that the installations aforesaid may be made without creating a hazardous condition.”
After acquiring title in 1976, LaSalle proposed to use and develop the property subject to the servitudes; however, LP&L advised LaSalle that such action would constitute an interference and create a hazard to the operation of its transmission line.
LaSalle then filed suit seeking a declaratory judgment recognizing its right to use and develop the thirty-five foot area on each side of the thirty foot center strip servitude, and limiting LP&L’s rights thereon to cutting trees and shrubs.
LP&L reconvened for a declaratory judgment alleging that LaSalle had no right to use the land other than for the specific purposes set forth in paragraph (i), and further asked that LaSalle be ordered to remove a sewer lift station previously constructed. Plaintiff in reconvention was ordered to amend its petition to specify how the sewer lift station interfered with the servitude, but subsequently the lift station was removed rendering this issue moot.
Motions for summary judgment were filed by both sides and based upon the pleadings, exhibits, interrogatories, affidavits, and a contradictory hearing, summary judgment was rendered in favor of plaintiff LaSalle from which LP&L appeals suspen-sively.
The lower court ruled that the provisions of paragraph (i) are merely illustrative and LaSalle is free to use the property subject to the specific uses granted to LP&L. The net result is to allow LaSalle to exercise its ownership rights on the property as long as it does not interfere or create a hazard with the power line or prevent clearance of shrubs and trees on the adjacent servitude.
In his Reasons for Judgment the trial judge cites three cases which provide general rules for interpretation of servitude agreements:
McGuire v. Central Louisiana Elec. Co., Inc., 337 So.2d 1070 (La.1976) states that a conventional servitude is governed principally by the intention of the parties and quotes Art. 709 of the Louisiana Civil Code of 1870 which provides that owners of land may establish “such servitudes as they deem proper” subject to public policy limitations. The court said that in case of doubt as to the extent of the predial servitude or the manner of using it, the instrument creating the servitude should be interpreted in favor of the owner of the property to be effected.
*576 Barnes v. Dixie Electric Membership Corporation, 323 So.2d 247 (La.App. 1st Cir. 1975) reiterates that the rights of the servitude owner must necessarily revolve around what is reasonable and necessary from the point of view of both parties. Arcuri v. Cali, 244 So.2d 309 (La.App. 4th Cir. 1971) stated that the language in servitude agreements must be construed strictly.
If the reservations in paragraph (i) are illustrative only, as determined by the lower court, then the landowner is able to use the property subject to the servitudes. However, assuming the language in paragraph (i) is restrictive it is necessary to review the entire agreement to determine the full intent of the parties. In order to interpret an instrument to determine the intent of the parties, all provisions should be given effect. Rock Island, A. & L. R. Co. v. Gournay, et al., 17 So.2d 8 (La.1943).
Paragraph (h) of the agreement provides: “The easements herein granted are limited to the uses and purposes hereinabove expressed and for no other purpose whatsoever.”
This provision restricting the grantee should be read in conjunction with paragraph (m):
“In the event that the use of the aforesaid easements across the said premises for the purposes herein expressed shall be abandoned or otherwise discontinued, the said easements shall thereupon cease and determine, and the Grantee shall surrender or cause to be surrendered to the Grantor or its successors or assigns, the peaceable possession of the above described premises, and title to said premises shall remain in the Grantor or its successors or assigns, free and clear of all rights and claims of the Grantee for the use and occupancy of said premises. Full and complete title, ownership and use of Grantor’s premises and of the portions thereof herein involved are reserved to Grantor, its successors and assigns, subject to the right, permission and authority herein expressly granted. Upon termination hereof for any reason whatsoever the Grantee hereby agrees to restore the premises of the Grantor to a like condition as at present insofar as the same may be practicable in the opinion of the duly authorized representative of the Grantor.” (emphasis added)
LP&L relies on paragraphs (d) and (i) as providing the only uses permissible to the landowner; however, paragraph (m) confirms title, ownership and use of this land to LaSalle. These provisions are contradictory if (i) is restrictive and any doubt as to usage of this predial servitude should be resolved in favor of the property owner. McGuffy v. Weil, 125 So.2d 154 (La.1960); McGuire v. Central Louisiana Elec. Co., Inc., 337 So.2d 1070 (La.1976); Lake Forest, Inc. v. Drury, 352 So.2d 305 (La.App. 4th Cir. 1977).
The provisions of LSA-C.C. Art. 730 are applicable to this conflict:
“Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate.”
The effect of the District Court’s judgment is simply to allow the landowner to use its property subject to the express servitude rights of LP&L. If LaSalle’s use causes interference, creates a hazard, or impinges on the enjoyment of the servitude, then LP&L has a right to complain. That matter is not now before us.
Accordingly, the judgment of the District Court is affirmed. Costs of this appeal to be paid by appellant.

AFFIRMED.