393 So.2d 816 (1981)
JACKSON SQUARE TOWNE HOUSE HOMES ASSOCIATION, INC., Plaintiff-Appellant,
v.
Malcolm Eugene MIMS and Eunice Blackburn Mims, Defendants-Appellees.
No. 14393.
Court of Appeal of Louisiana, Second Circuit.
January 13, 1981.
Freyer & Fox by Gary L. Fox, Shreveport, for plaintiff-appellant.
Nelson, Hammons & Johnson by Brian D. Smith, Shreveport, for defendants-appellees.
Before HALL, MARVIN and FRED W. JONES, JJ.
MARVIN, Judge.
The plaintiff association appeals from the rejection of its demands to enforce restrictive *817 covenants and to compel the owners of a town house to remove a portable 8 × 10' metal storage building which they had placed on their lot in the town house development.
The pertinent covenants are as follows:
"Article IX
"Section 1. Land Use and Building Type. No lot shall be used except for residential purposes. No building shall be erected, altered, placed, or permitted to remain on any lot other than one single-family dwelling not to exceed two stories in height above the ground level of highest elevation on which any portion of the main building is erected, and a private garage and such outbuildings as are customarily appurtenant to dwellings, every building except a greenhouse to correspond in style and architecture to the dwelling to which it is appurtenant. No out-building shall exceed the dwelling to which it is appurtenant in height, number of stories, or size. A garage or carport to house at least two automobiles must be provided on each lot."
"Section 2. Plans and Specifications. No building shall be erected, placed or altered on any lot until the construction plans and specifications and a plan showing the location of the structure have been approved by the Architectural Control Committee as to natural harmony of exterior design with the existing structure and as to location with respect to topography and finished grade elevations. No fence or wall more than two (2) feet in height shall be erected, placed or altered nearer to any street than the minimum setback line, except two (2) subdivision markets shall be constructed of a minimum of seventy five (75) percent masonry veneer, except for windows, doors, louvers, covered porches and other decorative features that may be approved after plans and specifications are submitted and except when not practical because of design of building and said design has received the prior approval of Architectural Control Committee. No fence or wall shall be constructed higher than six (6) feet and no fence or wall shall be constructed without the prior approval of the Architectural Control Committee as to type, materials, Etc.
"The Committee's Approval or disapproval as required in these covenants shall be in writing. In the event the committee or its designated representative, fails to approve or disapprove within thirty (30) days after plans and specifications have been submitted to it, or in any event, if not suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with."
"Section 8. Building Location. No building shall be located on any lot nearer to the front lot line other than that shown on the recorded plat of said subdivision."
"Section 11. Temporary Structures. No structure of a temporary character, trailer, basement, tent, shack, garage, barn, or other out-building shall be used on any lot at any time as a residence either temporarily or permanently."
"Article X
"Section 1. Enforcement. The Association, or any owner, shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration. Failure by the Association or any owner to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter."
"Section 2. Severability. Invalidation of any one of these covenants or restrictions by judgment or court order shall in no wise affect any other provisions which shall remain in full force and effect."
The record reveals that this town house development contains 103 residential lots, on seven of which the owner had placed a storage building similar to defendants' storage building which is complained of. Defendants made a written request of the association's architectural control committee for permission to place the building on their lot. Notwithstanding that permission was refused, defendants placed the building on their lot and this suit followed. It was shown that some, and perhaps most of the other seven storage buildings had been *818 placed on town house lots with the verbal approval of, or without previous objection from, the architectural control committee of the association. This committee's members have changed because they are elected from time to time.
The defendant lot owners received this response from the association to their request for permission to place the building on their lot:
"Because of the unsightly appearance of the existing storage buildings and because of our responsibility to all homeowners, the Architectural Control Committee has unanimously voted to disapprove all applications for additional storage buildings. The committee believes that these buildings detract from the appearance of our homes and thus decrease their value.
"At a joint meeting held on January 3, 1980, all members of the Board of Directors present agreed with the Architectural Control Committee that no exception to this decision should be made."
The extent to which these restrictions affect either or both out-buildings which may be permitted on the property and uses which may be made of permitted structures must be determined by the entirety of the restrictions. Salerno v. Delucca, 211 La. 659, 30 So.2d 678 (1947); Smith v. DeVincent, 322 So.2d 257 (La.App.2d Cir. 1975).
These restrictions clearly contemplate that "... out-buildings [including greenhouses] as are customarily appurtenant to dwellings ..." may be placed on the town house lots, provided the out-building is in harmony with the exterior design of an existing structure on the lot. A shack, barn, or other out-building may not be used as a residence.[1] When this language is construed with the entire restrictions, the term out-buildings customarily appurtenant to dwellings, such as sheds and barns, clearly means storage sheds.
These restrictions do not authorize the plaintiff association to adopt a rule or policy forbidding all storage sheds or buildings, but only those which have been determined on a case to case basis not to comply with the restrictions. The exterior of a permitted storage shed must be in harmony with the exterior design of the existing structure on the lot. The restrictions are not unenforceable, but the authority of the association through its architectural control committee to enforce the restrictions must be exercised in accordance with the terms of the restrictions and with law. Where the restriction is couched in general terms, the reasonableness of the association's enforcement of the restriction in a particular case may be weighed by the courts. 4626 Corp. v. Merriam, 329 So.2d 885, 889 (La. App. 1st Cir. 1976). See and compare Lake Forest, Inc. v. Drury, 352 So.2d 305 (La. App. 4th Cir. 1977).
The association's attempt to ban defendants' storage building by banning all storage buildings is clearly an unreasonable exercise of authority afforded to the association by the restrictions. See 4626 Corp., supra.
At appellant's cost, judgment is AFFIRMED.
NOTES
[1] In Smith, supra, the word shack in a restriction was said to be synonymous with the word shed. 322 So.2d at 262.