CRAIN, Judge.
This is an appeal by defendants (the Son-niers) from the trial court’s issuance of a preliminary injunction prohibiting defendants from violating certain subdivision restrictions.
FACTS
In January, 1983, Mr. and Mrs. Sonnier purchased lot 11 in Oakbrook Subdivision. On August 18, 1983, the Sonniers submitted building plans for their proposed new residence to the Oakbrook Architectural Control Committee (OACC) pursuant to the subdivision restrictions and covenants. By letter dated August 26, 1983, John Webb, chairman of OACC, notified the Son-niers that their plans were not in compliance with certain building restrictions and covenants of the subdivision. Lot 11 is a corner lot bordering Oak Brook (variously referred to as Oakbrook) and Oak Shadow Drive. According to the plan submitted, the house was to be placéd “catty-cornered” on the lot approximately twenty-one degrees off the line parallel with Oak Brook Drive. The attached garage and shop doors opened on Oak Shadow Drive and were to be set approximately 65 feet from the property line on Oak Shadow Drive. The committee interpreted Article VII, Section 12 of the building restrictions to require that the garage and shop doors be set back 100 feet from Oak Shadow Drive since they opened on that street, even though the house faced Oak Brook Drive.
Several meetings were held between the committee and defendants and at that time various changes in the plans were recommended by the committee. In addition, it was the opinion of the committee that the long unbroken roof line, the wide expanse of garage and shop doors, and the use of roll up sectional garage and shop doors presented a commercial type facade which was inconsistent and not in harmony with the surrounding residences. The committee recommended changing or shielding the garage doors, altering the roof line, and providing a method for getting people off the street and into the house. After several meetings between the parties, the Sonni-ers insisted that they were in compliance with the restrictions and they informed the committee that they intended to begin construction using their original plans.
By letter dated September 21, 1983, and postmarked September 22, 1983, Ross J. Willis, President of Oakbrook Civic Association, notified the Sonniers that since the parties were unable to reach a satisfactory solution within the thirty day limit imposed by Article VI of the restrictions, their plans had been rejected by the committee. Despite the rejection of the plans by the committee, the defendants began construction of their residence. On December 2, 1983, plaintiff, Oakbrook Civic Association, filed a petition for injunctive relief.
TRIAL COURT
In its oral reasons for judgment the trial court found that the building restrictions had been properly filed, thus giving constructive knowledge of their contents to all prospective purchasers. The OACC had been very active in approving and disapproving plans submitted over the years, and the committee had promptly responded when the plans were submitted by the Son-niers. Further, it found that the thirty day period in which the committee must approve or disapprove plans was not applicable because of the good faith efforts of the committee in the ongoing negotiations between the parties. The preliminary injunction was granted based on the architectural *999 committee’s opinion that the configuration of the house on the lot was not in harmony with the surrounding homes, the court considering this was a reasonable basis for disapproving the plans. The trial court did not determine whether Article VII, Section 12 requires attached garages and carports to be set back one hundred feet from the street on which they open (Oak Shadow Drive).
Defendants appealed alleging that the trial court erred in finding that plaintiff complied with the thirty day notice of rejection requirement of Article VI, Section 1; in not finding that the plans conformed to Article VII, Section 12 of the restrictions which required the garage doors to be set back one hundred feet from the front property line; and in not finding that Article VI of the building restrictions was vague.
LEGALITY OF ARTICLE VI
“Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements.” La.C.C. art. 775. The restrictions may be enforced by mandatory and prohibitory injunctions without a showing of irreparable harm. La.C.C. art. 779.
Article VI of the Oakbrook building restrictions provides in pertinent part that:
No building, fence, wall or other structure shall be commenced, erected or maintained upon The Properties, ... until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to the harmony of external design and location in relation to surrounding structures and topography by the Board of Directors of the Association, or by an architectural committee composed of three (3) or more representatives appointed by the Board, (emphasis added).
A review of the record reveals that the architectural committee had a history of continuous activity of reviewing all construction plans as required by the restrictions. On several occasions it had withheld its approval until recommended changes were made by the prospective builders. Mr. John L. Webb, registered architect of thirty-nine years and chairman of the architectural committee, testified that the plans were disapproved because the long unbroken roof line and the wide expanse of sectional rollup garage and shop doors within one hundred feet of the property line on Oak Shadow Drive present a commercial appearance which is not harmonious with the surrounding structures and location.
“Where the restriction is couched in general terms, the reasonableness of the association’s enforcement of the restriction in a particular case may be weighed by the courts.” Jackson Square Towne House Homes Association, Inc. v. Mims, 393 So.2d 816, 818 (La.App. 2d Cir.1981). This rule originated in the circuit in 4626 Corporation v. Merriam, 329 So.2d 885 (La.App. 1st Cir.1976), writ denied, 332 So.2d 800 (La.1976). In 4626 Corporation, the restrictions provided for an architectural control committee to approve “... [a]ll exteri- or signs....” There were absolutely no guidelines for which signs would be approved and which would not. This circuit held that disapproval of the height of the sign in question was reasonable because height is a “reasonable criterion upon which to reject the sign ... also ... the subject sign was the only subdivision sign facing Interstate 10 that was higher than the roof-line of the building it advertised.” 4626 Corporation, 329 So.2d at 889.
On the other hand, the Fourth Circuit has not applied reasonableness of enforcement to enforce a restriction which is vague and indefinite and which does not set forth the limitations placed on the use of property. Lake Forest Inc. v. Drury, 352 So.2d 305 (La.App. 4th Cir.1977), writ denied, 354 So.2d 199 (La.1978). The restriction which was held to be vague and indefinite required approval of the seller as to “... quality of workmanship and materials, harmony of external design, location with *1000 respect to topography and finished grade elevation.” Lake Forest, Inc., 352 So.2d at 306.
A possible conflict exists between the circuits as a result of the above cases. However, there appears to be a distinguishing feature between them. In both 4-626 Corporation and Jackson Square Towne House Homes, the particular restriction which was general in nature dealt with appurtenant structures, not with total use of the property by the owner.[1] In Lake Forest, Inc., the restriction dealt with total use of the property. Consequently, no building at all could be placed on the property in Lake Forest, Inc., without approval by the designated authority as to “harmony of external design.” That is the exact situation in this case. We hold that where a restriction couched in these general terms prohibits total use of the property and such restriction is used without reference to specific restrictions to restrict the use of property, the restriction is unenforceable as an inhibition of the free use and development of immovable property favored by law. See La.C.C. art. 783; McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960); Lake Forest, Inc., 352 So.2d at 307. Consequently, the trial court erred in granting the preliminary injunction based solely on the finding by OACC that the configuration of the proposed home was not in harmony with surrounding homes.
SET BACK FROM PROPERTY LINE
The trial court did not reach the third assignment of error wherein defendants allege that Article VII, Section 12 should be interpreted to mean that only where attached garage doors open to the street on which the front of the residence faces must the garage door be set back one hundred feet from the property line. We have reversed the issuance of the preliminary injunction on the issue addressed by the trial court. However, since the set back question was litigated, and to avoid additional litigation solely on that point, we will consider that assignment of error.
Plaintiff argues that the restriction should be interpreted to mean garages should be set back at least one hundred feet from any street on which the residence has an elevation or entrance. The intent of this restriction, plaintiff argues, is to preserve the appearance of property on all streets, thus, the close proximity of garage doors on any street is a detriment to the property values of the subdivision.
Article VII, Section 12 provides:
Garages and carports may be attached to the main dwelling, but must not be nearer to the side or rear property line than fifteen (15) feet. Attached garages and carports shall not open to any street on which the residence faces, unless located wholly at least one hundred (100) feet from the front property line.
Any doubts as to the validity, existence or extent of a restriction must be resolved in favor of the unrestricted use of the immovable. La.C.C. art. 783. Whenever differences arise as to the extent of the restrictions, the court should look to the entire context of the restrictions and consider the intention of the parties who imposed the restrictions. The property owners or prospective purchasers were influenced in purchasing their property by the restrictions and are entitled to the presumption that they will be fairly and faithfully complied with. Salerno v. De Lucca, 211 La. 659, 30 So.2d 678 (1947). The equities of the builder (owner) must be balanced with the welfare of the other owners in the subdivision. Camelot Citizens Association v. Stevens, 329 So.2d 847 (La.App. *1001 1st Cir.1976), writ denied, 333 So.2d 242 (La.1976).
The words of a contract must be given their accepted meaning. La.C.C. art. 2047. Article VII, Section 12 of the building restrictions, when read in its entirety, suggests that the developer who imposed the restrictions intended to provide that all attached garages and carports be set back at least fifteen feet from the side or rear property line. ' However, attached garages must be set back one hundred feet from the front property line when opening on the same street that the front of the residence faces. Therefore, the Sonniers’ garage need not be set back one hundred feet from Oak Shadow Drive because the residence, as proposed, does not face Oak Shadow Drive.
We hold that although the architectural committee has the authority to enforce the restrictions, it acted incorrectly in enforcing Article VII, Section 12 by disapproving the plans due to the hundred foot set back requirement for the garage doors.
THIRTY DAY LIMIT FOR DISAPPROVAL
Since we have held that disapproval by OACC was improper, we are not required and do not decide whether the disapproval met the 30 day time limit imposed by Article VI of the restrictions.
DECREE
The judgment of the trial court granting a preliminary injunction is reversed. All costs including costs of this appeal are to be paid by appellee.
REVERSED AND RENDERED.

. 4626 Corporation dealt with a sign. Jackson Square Towne House dealt with appurtenant structures such as storage sheds and required they be in harmony with the main structure. Consequently, there was a degree of specificity in harmonizing the appurtenant structure with existing structures already on the property. In any event it appears that a restriction which is so general that a landowner is not fairly apprised of uses that can be made of property is not cured because a court finds that the particular enforcement of the otherwise invalid restriction happens to be reasonable.