DONALD E. KEINZ et al., Respondents-Appellants, v. NIAGARA MOHAWK POWER CORPORATION, Appellant-Respondent.

Fourth Department, May 24, 1973.

*Callanen, Foley & Hobika* (*Gardner A. Callanen* of counsel), for appellant-respondent.

*Durr & Keinz* (*Earle C. Bastow* of counsel), for respondents-appellants.

DEL VECCHIO, J. P. Defendant appeals from a judgment awarding plaintiffs damages for the wrongful trimming and cutting of trees and undergrowth on their land and directing defendant to remove its pole and wires from the property. Plaintiffs cross-appeal from the failure to award them treble damages.

In 1966 plaintiffs became owners of a house and lot located on Valley View Road in the Town of New Hartford, Oneida County. The lot had a frontage of 105 feet and a depth of about 200 feet to Oneida Street at the rear, and was bounded on the south by a ravine. It was part of a development known as Glen Crest Village formerly owned by Fay T. Inman. At the time plaintiffs acquired title defendant owned power lines which

ran from a pole in Oneida Street easterly along the north boundary line of plaintiffs' lot to a pole on the lot and continued to a pole in Valley View Road.

In 1969, after defendant's employees, without plaintiffs' consent, had trimmed and removed trees and shrubs growing on their property in the vicinity of the power lines, plaintiffs commenced the present action for damages and for a judgment requiring defendant to remove its lines and poles. In its answer defendant alleged as an affirmative defense that on May 10, 1940 and on August 24, 1941 Inman, plaintiffs' predecessor in title, granted to defendant's predecessor, the Central New York Power Corporation, easements over plaintiffs' land together with the right to trim and cut trees and other obstructions likely to interfere with defendant's power lines. Copies of the instruments bearing the dates referred to were attached, together with maps showing the location of poles in the area of plaintiffs' lot and showing Glen Crest Village. The answer also alleged that plaintiffs had actual notice of the easement as used with poles and wires prior to the purchase of their lot.

When the action was tried without a jury it was conceded that defendant's power lines and poles located near the north boundary of plaintiffs' property were in existence and that plaintiffs had actual knowledge thereof prior to acquiring title. It was also conceded that the instruments alleged to have been executed by Inman on May 10, 1940 and August 24, 1941 were not acknowledged, attested to or recorded. By virtue of this fact, the Trial Judge repeatedly refused to admit in evidence the instruments (identified as Exhibits 26 and 28), maps showing pole locations (identified as Exhibits 27 and 29), and a map of Glen Crest Village (identified as Exhibit 30), on the ground that they were not binding against plaintiffs under section 243 of the Real Property Law. He also sustained objections to testimony concerning the execution of the instruments and the relevancy of the maps offered by a witness, Kline, who obtained the easement of May 10, 1940 from Inman and who identified his signature on the easement of August 24, 1941. These rulings were erroneous.

Exhibit 26, titled "Electric Easement", granted to defendant's predecessor a right of way and easement to build and maintain an electric line, including poles, wires and other appurtenant apparatus, with the right to trim, cut and remove any trees, limbs or other obstructions on either side of the lines which the Company might deem likely to interfere with the operation thereof and to keep the wires clear by at least forty-

eight inches, " from an existing pole on the easterly side of the Utica-Bridgewater Road, otherwise known as Route 8 (Oneida Street), thence easterly along the northerly boundary line of the lot situated on the northerly side of a deep ravine and facing on Valley View Road to the east * * * also along the division lines of the lots situate along * * * Valley View Road ".

Exhibit 27 is a map dated October 25, 1940 showing the location of the power line coming into the development from a pole in Oneida Street (the source of power), then running easterly 80 feet to a pole on the north boundary line of plaintiffs' lot, continuing 148 feet to a pole in Valley View Road.

Exhibit 28, titled " Electric and Telephone Easement " and dated August 24, 1941, bears the signature of Inman and specifies that the lines are to be located as shown on a map of Glen Crest Village dated September 30, 1940. Exhibit 30 is such a map, filed in the Oneida County Clerk's office on November 22, 1940.

Exhibit 29 is a map of the portion of the development which included plaintiffs' property showing the power line and an extension of it, which Kline testified was the map referred to in Exhibit 28.

The fact that the instruments of May 10, 1940 and August 24, 1941, purporting to grant easements for defendant's predecessor, did not meet the requirements of execution set forth in section 243 of the Real Property Law, did not make them inadmissible on the trial of this action. There is abundant authority that a grant of an easement by an instrument which is unacknowledged and unattested may nevertheless support equitable rights and interests in property which, when established by possession and improvements, are effective against a subsequent purchaser of the servient estate who takes with actual knowledge of the possession and improvements (*Historic Estates* v. *United Paper Board Co.,* 285 N. Y. 658; *City of New York* v. *New York & South Brooklyn Ferry & Steam Transp. Co.,* 231 N. Y. 18, 25–26; *Antonopulos* v. *Postal Tel. Cable Co.,* 261 App. Div. 564, affd. 287 N. Y. 712; *Rochester Poster Adv. Co.* v. *Smithers,* 224 App. Div. 435; *Sanzone* v. *Niagara Mohawk Power Corp.,* 47 Misc 2d 237, affd. 27 A D 2d 646; and see *Pallone* v. *New York Tel Co.,* 34 A D 2d 1091, affd. 30 N Y 2d 865). In view of the admission that plaintiffs acquired title with knowledge of the power line and poles, the easement agreements and related maps should have been received as bearing upon the existence of equitable rights in defendant to the maintenance of

the wires and poles (only one of which was shown to be on plaintiffs' premises) along the northerly line of plaintiffs' property.

The case of *Nellis* v. *Munson* (108 N. Y. 453), relied on by plaintiffs, does not suggest a contrary result. In distinguishing *Nellis*, and another case, in *City of New York* v. *New York & South Brooklyn Ferry & Steam Transp. Co.* (*supra*, p. 26) the Court of Appeals said: "All that they decide is the effect of notice when restricted to the deed and nothing else. The question is distinctly reserved in *Nellis* v. *Munson* (108 N. Y., at pp. 461, 462), whether different effect may not be given to notice of extrinsic equities. That question is now here. Possession and improvements are effective against subsequent purchasers if the possessor of the land is there without a deed. We find it inconceivable that they should be ineffective, in like circumstances of notice, when he is there with an imperfect deed."

The argument that section 261 of the Real Property Law, which bars the presumption of a grant or the acquisition of a prescriptive right by virtue of long continued existence of power or communication lines, defeats defendant's claim of rightful occupancy is answered by the fact that no presumption of a grant or prescriptive right is claimed by defendant here. This is not a case in which defendant rests its right on adverse possession, which section 261 would make ineffective (*O'Meara* v. *Postal Tel. Cable Co.*, 279 N. Y. 282); defendant's claim is predicated on an equitable right founded on the explicit grant contained in an executed instrument, coupled with possession and improvements, and limited in its application to those taking title to the servient estate with notice (*City of New York* v. *New York & South Brooklyn Ferry & Steam Transp. Co.*, *supra*).

The Trial Judge also erred when in his decision he stated that Exhibits 26 and 28 describe property other than plaintiffs'. This conclusion was apparently derived from the unsworn statement by plaintiffs' counsel at the conclusion of the proof, and is contradictory to the clear language of Exhibit 26, which both specifically describes an easement along the northerly boundary line of " the lot situated on the northerly side of a deep ravine and facing on Valley View Road to the east " (plaintiffs' lot) and grants an easement along all the division lines of the lots situate, like plaintiffs', along Valley View Road. The applicability of Exhibit 28 is demonstrated by the testimony of Kline, identifying Exhibit 29 (which shows the line on plaintiffs' property) as the map referred to in Exhibit 28 as the locator

of the lines. In the face of the foregoing, any conclusion that Exhibits 26 and 28 describe property other than plaintiffs' would be against the weight of the evidence.

The judgment should be reversed and a new trial granted.

MARSH, MOULE, SIMONS and HENRY, JJ., concur.

Judgment unanimously reversed on the law and facts and a new trial granted, with costs to abide the event.