344 So.2d 427 (1977)
James Leake STIRLING et al., Plaintiffs-Appellants,
v.
DIXIE ELECTRIC MEMBERSHIP CORPORATION et al., Defendants-Appellees.
No. 11164.
Court of Appeal of Louisiana, First Circuit.
March 21, 1977.
*428 Stephen P. Dart, St. Francisville, for plaintiffs-appellants.
Richard M. Sandfer, Baton Rouge, for defendants-appellees.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
SARTAIN, Judge.
This is a suit for damage to trees, plants and shrubs occasioned by the use of a chemical in the maintenance of a utility right of way. Plaintiffs appeal from a judgment which they contend is inadequate. We amend and affirm.
The incident occurred in June of 1972 when Dixie Electric Membership Corporation (Dixie) engaged Chem-Weed, Inc. (Chem-Weed) to apply by helicopter a chemical known as Tordon 101 along its right of way in West Feliciana Parish.
Plaintiffs contend that the trial judge erred in (1) finding that Dixie had the right to use the chemical; (2) failing to follow the uncontroverted testimony of their experts and substituting his judgment therefor on the question of quantum; and (3) failing to award damages for mental anguish.
In 1938 Mr. James Leake Stirling granted Dixie a servitude for utility purposes which, in pertinent part, provided:
". . . and to place, construct, operate, repair, maintain, relocate and replace thereon . . . an electric transmission or distribution line or system, and to cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling . . ."
Plaintiffs argue that the above language does not permit the use of chemicals. The trial judge, in his written reasons for judgment, stated:
". . . it is the opinion of the Court that the servitude may not and should not be so construed as to permit only the existing or then customary methods and types of tools and equipment `to keep them clear of said electric lines or system. . .', or to forestall the utilization of newly develop techniques especially if their utilization could be shown to create no greater loss or damage to the fee owner."
We must disagree with the above conclusion of the trial judge. Of course, it can not be argued that the use of chemicals was contemplated because such use was unknown in 1938. Equally true is the fact that a grantee is not expected to forego technical advances in the industry and to remain bound to the use of ancient and outmoded hand tools. However, in the instant case, the use of chemicals was entirely unwarranted.
The right of way instrument did not provide for a definite location or a specific width for the servitude. Its location was undoubtedly fixed by mutual consent when the lines were initially installed. Absent a designated width, the trial judge found that ten feet on either side of the line, or twenty feet, was appropriate. We agree. The line *429 traverses the front and side yard of plaintiffs' property. Mr. and Mrs. Stirling had spent years in planting, developing and nurturing an assortment of trees, plants, and ornamental shrubs.
Chem-Weed was instructed to apply the chemical by helicopter along Dixie's right of way to a width of fifteen feet on each side of the line, or thirty feet. The application of the chemical was indiscriminate, without regard to the height or proximity of any plant, tree or shrub to the line. Any and all vegetation within and along the thirty foot path got the full treatment.
The use of herbicides permits a method referred to as "side trimming." The foliage is destroyed. After the leaves are gone, the limbs rot and fall to the ground. During the process the dead limbs as well as all branches of the smaller plants present a burned and blighted appearance. Not all of the trees and plants herein damaged were within the twenty foot right of way. Plaintiffs' experts were uniform in their opinions that the extent to which the chemical was used was excessive and even the trees that were "side trimmed" were substantially damaged.
We are very hesitant and reluctant to disagree with a trial judge who has visited the scene of the damage. However, we must do so in the instant case for several reasons. First, we disagree with the decision as a matter of law. We do not believe that the use of a chemical here was permissible under the circumstances. The vast majority of trees and shrubs were not a threat to the electrical line nor does Dixie claim that they were. They were located in plaintiffs' front and side yard and had been there for many years with full knowledge of Dixie.
Generally, a grantor is permitted to plant decorative shrubs along a servitude of this nature and to enjoy the use of the land within the right of way so long as it does not obstruct the purpose for which the servitude was granted. If in the course of maintaining the lines it becomes necessary to remove, "cut and trim trees and shrubs", it must be in a reasonable manner, with due regard to the rights of all parties. This we find to be the intent of the servitude agreement. The agreement did not call for a periodic wholesale destruction of every parcel of vegetation. Perhaps the application of the chemical could have served the desired purpose had it been applied by means other than a helicopter and on a more selective basis.
The trial judge reasoned that equal damage would have been inflicted had mechanical equipment been used because such equipment would have had to cross over plaintiffs' lawn or roll over the planted areas themselves. We would be more sympathetic to defendants' cause had any effort been made to minimize the damage or even consider the use of mechanized equipment. Aerial spraying was utilized because ". . . in a nut shell it boils down to cost." Plaintiffs' carefully landscaped front yard was accorded no greater consideration than an ordinary fence row. Further, we note, even according to defendants' witness, that several of the larger trees which were a threat to the line, but not in the twenty foot right of way, were accessible by ground.
We now turn to the question of damages. The trial judge awarded plaintiffs $275.00 for two azalea bushes (10'×12') and $425.00 for damages to the other plants, and for labor required for removal of dead matter and filling and grading, or a total of $700.00.
We find the amount awarded should be increased to the sum of $3,107.00 in accordance with the expert testimony of Dr. Neil G. Odenwald.[1] Besides Dr. Odenwald, Mrs. Camilla Bradley Truax also testified as an expert on behalf of plaintiffs. Both of these witnesses made a detailed study of the damage and testified in similar fashion. *430 Of the two, we find the report and testimony of Dr. Odenwald to be more thorough and reasonable. We see no reason to report here his item by item evaluation. Defendants' expert did not disagree with Dr. Odenwald's approach to the problem. He only disagreed with the percentage of damages assigned to a given tree, plant or shrub by Dr. Odenwald. Further, defendants' witness had not visited the site or viewed the damage.
We now turn to the claim for mental anguish.
In Mr. Stirling's original petition he made no claim for mental anguish or emotional distress. However, upon his death his widow, Mrs. Josie L. Stirling, and daughter Mrs. Ann Stirling Weller, were substituted as parties plaintiff. Thereafter, Mrs. Stirling amended the petition to seek damages for mental anguish and emotional distress. This claim must be rejected for there has been no showing of resulting illness or bodily harm. Carimi v. Saia, 301 So.2d 895 (La.App. 4th Cir. 1974); Todd v. Aetna Casualty & Surety Co., 219 So.2d 538 (La.App. 3rd Cir. 1969), writs refused, 254 La. 13, 222 So.2d 66; Ayala v. Bradley Electric Company, Inc., 318 So.2d 645 (La. App. 4th Cir. 1975), writs issued, 322 So.2d 770 (La.1975) and dismissed on joint stipulation, December 10, 1975.
Accordingly, for the above reasons, the judgment of the district court is amended by increasing the award for damages from $700.00 to THREE THOUSAND ONE HUNDRED SEVEN AND 00/100 ($3,107.00) DOLLARS, together with legal interest thereon from date of judicial demand, until paid. In all other respects the judgment is affirmed. All costs of these proceedings are assessed against defendants.
AMENDED AND AS AMENDED AFFIRMED.
NOTES
[1] Dr. Odenwald is an Associate Professor of Landscape Architecture at Louisiana State University. He holds a Ph.D. in Ornamental Horticulture. He is listed in Outstanding Educators of America (1973) and received the Louisiana Garden Club Federation's Award of Merit in 1966 and 1972.