**Bill D. MURPHY and Wife, Mary Murphy, and Don R. Murphy, Appellants,**

v.

**FANNIN COUNTY ELECTRIC COOPERATIVE, INC., Appellee.**

**No. 06–97–00003–CV.**

Court of Appeals of Texas, Texarkana.

Submitted Sept. 30, 1997.

Decided Nov. 14, 1997.

Robert W. Minshew, Kennedy, Minshew, Campbell, Sherman, for appellants.

Myles Porter, David C. Turner, Jr., Turner, Meehan, Porter, Bonham, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

Grant, Justice.

Bill D. Murphy, Mary Murphy, and Don R. Murphy (the Murphys) appeal from a judgment in favor of Fannin County Electric Cooperative, Inc. (Co–Op). The Murphys sued the Co–Op for trespass, negligence, and gross negligence. A jury returned a verdict in favor of the Co–Op on all causes of action. The trial court denied the Murphys' motion for new trial.

The Murphys do not complain on appeal of the jury's answers to the questions of negligence and gross negligence. The Murphys first contend that the trial court erred in overruling their challenges for cause to prospective jurors who were members of the Co–Op. At oral argument, the Murphys conceded that they waived any error in rulings on their challenges for cause. Therefore, we address the Murphys' second point of error only. Their second contention is that the trial court erred in failing to grant their motion for new trial because the jury's answer on the issue of trespass was improper as a matter of law and against the great weight and preponderance of the evidence.

In 1981, the Murphys purchased 110 acres of property in Fannin County. The property is subject to two unrecorded easements granted in 1937 by the Murphys' predecessor-in-interest in favor of the Co–Op. The easements allow the Co–Op to cut and trim trees to keep them clear of power lines and

to cut down dead, weak, leaning, or dangerous trees that are tall enough to strike the wires in falling.

On May 1, 1994, a right-of-way crew for the Co–Op entered the Murphys' property to clear brush and tree limbs from the power lines adjacent to the Murphys' property. Over a period of three days, the Co–Op cut down and poisoned 352 trees four inches in diameter or larger on the Murphys' property. Bill Murphy testified that the tallest of the trees was approximately thirty feet.

The Murphys contend that the trial court erred in failing to grant their motion for new trial because the jury's answer on the issue of trespass was improper as a matter of law and against the great weight and preponderance of the evidence.

■ A party attacking the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof must demonstrate on appeal that the evidence established all vital facts in support of the issue as a matter of law.[1] We must first examine the record for evidence that supports the jury's finding, while ignoring all evidence to the contrary. If there is no evidence to support the fact finder's answer, the entire record must be examined to see if the contrary proposition is established as a matter of law.[2]

■ When the party having the burden of proof challenges the factual sufficiency of a finding in the trial court, that party must show that the jury's finding was against the great weight and preponderance of the evidence.[3] If a finding is against the great weight and preponderance of the evidence, the inquiry is whether the finding is so contrary to the overwhelming weight of all relevant evidence as to be clearly wrong and unjust.[4] In reviewing factual sufficiency points which complain of a jury's failure to find a fact, the court of appeals must be mindful that the jury was not convinced by a preponderance of the evidence.[5]

### Matter of Law

The Murphys contend that they were entitled to a finding as a matter of law. The test in this case is whether the Co–Op exceeded its rights under the easements granted to the Co–Op. In support of their position that trespass was established as a matter of law, the Murphys point to the language in the easements. The easements grant to the Co–Op:

the right to enter upon the lands of the grantor ... including the right to cut and trim trees to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.

■ An easement is a form of a contract, and it is interpreted by the court as a matter of law without the necessity of testimony unless the court finds some ambiguity.[6] There was no ambiguity concerning the issue of poisoning. Poisoning was not authorized under the terms of the easement. Ronald Odom, general manager of the Co–Op, testified that later easements contained language which authorized the poisoning of the stumps in the ground under the power lines to control growth, but no such language appears in the easements that are controlling in this case. Because there was an admission of the poisoning of the stumps and ground under the power lines by the Co–Op, and because there was no evidence to the contrary, the Murphys were entitled to a finding that the poisoning was a trespass. Because the jury did not reach the damage issue, this portion of the case must be remanded.

■ We next examine the issue of whether the Murphys are entitled to damages for the cutting and trimming as a matter of law. The jury was properly instructed on the issue of trespass as follows:

In determining whether a trespass has been committed, you are instructed that a

---

1. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

2. *Id.*

3. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

4. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

5. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988).

6. *See Phillips Natural Gas Co. v. Cardiff*, 823 S.W.2d 314 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

'trespass' is any act which exceeds or passes beyond the bounds of any rights which have been legally granted. For example, where one enters another's property under the authority of an expressed or conditional right but exceeds the expressed or conditional right, that persons [sic] becomes a trespasser as to such unauthorized actions. A conditional or restricted consent to enter land creates a privilege to do so only insofar as the condition or restriction is complied with.

In determining the question of trespass, you are further instructed that the intent of the trespasser is not a factor.

The Murphys, however, did not prove that the jury's answer when applied to the trimming and cutting was improper as a matter of law. Under the terms of the easement, the Co–Op had the right to cut and trim trees to the extent necessary to keep them clear of the electric lines and to cut down from time to time all the dead, weak, leaning, or dangerous trees that are tall enough to strike the wires in falling. There was a factual issue for the jury as to the extent necessary for such cutting and trimming. The jury had to decide whether the Co–Op exceeded its right to trim and cut this timber. Odom testified that it was necessary to cut these trees to keep them from interfering with the power lines. Ronnie Fox, a member of the crew that cut the Murphys' trees, testified that it was necessary to cut the trees below the power lines to keep the branches from interfering with the lines. Evidence was also presented of the growth of trees, particularly of the new growth from those trees that had been cut back. Thus, there was some evidence supporting the jury's finding that a factual issue on whether these cuttings and trimmings exceeded the right of the Co–Op. Therefore, the Murphys were not entitled to a finding on the issue as it applied to trimming and cutting the trees as a matter of law.

7. *Perry v. Perry Bros.*, 753 S.W.2d 773, 776 (Tex. App.—Dallas 1988, no writ).

8. 715 S.W.2d 629, 635 (Tex.1986).

## Against the Great Weight and Preponderance of the Evidence

In addressing a factual sufficiency challenge, the court may not substitute its judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence.[7] Reversal is appropriate only when a detailing of the evidence under the criteria set out in *Pool v. Ford Motor Co.*[8] indicates that the great weight of that evidence supports such action.[9] Under *Pool,* we must detail the relevant evidence and clearly state why the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust.[10] Also, we must state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.[11]

We have discussed above the evidence raised on behalf of the Co–Op. We now turn to the evidence to the contrary. For this, the Murphys relied upon the Co–Op's general manager and one member of the line maintenance crew.

In addition to the testimony discussed above, Odom admitted that he found no basis in the easements for cutting some of the trees. Odom testified:

Q ... We have already established if the tree is twenty-five feet tall you don't need to trim it because it's already clear of lines, isn't it?

A Correct.

....

Q ... Tell the jury what part of this easement gives you the right to cut down a twenty-foot tree even if its dead.

A It doesn't give us any.

Q All right. Now, tell the jury what part of this easement gives you the right to cut down a weak tree if it's twenty-five feet tall even if it's dead.

A Not any.

Q All right. Let's see, what part of the easement gives you the right to cut

9. *Herbert,* 754 S.W.2d at 144.

10. *Pool,* 715 S.W.2d at 635.

11. *Id.*

down a leaning tree that's twenty-five feet tall whether it's dead or alive?

A   Not any.

Q   All right.   Let's talk about what it says about dangerous trees.   Now, you can't cut down a dangerous tree unless it's tall enough to strike the wires in falling, can you?

A   No, sir.

. . . .

Q   All right.   And so neither of these easements that apply to the Murphy property gives you the right to cut down any tree that's less than, say, thirty-feet tall under any circumstances, do they?   Cut down is the word.   Cut down.

A   No, sir.

. . . .

Q   ... Now, would you tell the jury, then where, in your easement that we have looked at, it gives you the right to cut and poison a tree of any size less than thirty feet, even if it's in the bar ditch on a man's property?

A   It doesn't.

. . . .

Q   So why did you do it, Mr. Odom?

A   For the economical aspects for the cooperative.   We go back every three to four years trimming trees, so we have started a procedure that's anything on the county side of the right-of-way and we get permission from the landowner, we do cut down and poison tree stumps.

. . . .

Q   But you didn't get permission from these people in this case, did you?

A   No, sir.

. . . .

Q   So there is no right-of-way and there is no easement that gives you or anybody else permission to cut Mr. Murphy's trees, or anybody else's on the co-op trees, to the ground and poison them without their permission, is there?

A   No.

Odom was also questioned by the Co–Op as to his interpretation of the easements.

Q   What was your interpretation of these easements?

A   Yeah. The way they start, I interpret it, you know, it says cut and trim, and I interpret that that we have the right to cut trees.

Notably, this response followed Odom's testimony during questioning by the Murphys that he had not read the Murphy property easements prior to ordering the easement cleared.   This attempt to rehabilitate this witness does not explain his specific admissions of acts not authorized under the easements.   Odom also stated that he could not say whether any of the trees were dead, weak, leaning, or dangerous and tall enough to strike the wires when falling.

Ronnie Fox also testified to the necessity of cutting down the trees.   Fox stated that some of the trees could have been topped instead of cut down with the same result of keeping the tree limbs out of the power lines. In other words, it was not necessary to cut down some of the Murphys' trees.

Photographs admitted at trial graphically illustrate the cutting of very large trees to the ground, far below heights necessary to protect power lines.   While the Co–Op did show to the jury a film of the trees remaining on the property, the film does not disprove the damage to the other trees.   Below is a copy of one of the thirty-four photographs admitted showing the damage to the Murphys' property:

28

The jury found that the Co–Op did not exceed the rights granted by the easements when it cut down the Murphys' trees. The jury, as the trier of fact, has the responsibility to judge the witnesses' credibility, to assign the weight to the testimony, and to resolve any inconsistencies in the tes-

timony.[12]  The jury may disbelieve evidence which is contradicted.[13]  However, "to completely disregard undisputed evidence and admissions in favor of general conclusory statements ... is to go against the overwhelming weight and preponderance of the evidence." [14]  It is undisputed that the CoOp cut to the ground over three hundred trees on the Murphys' property.  It is also undisputed that an easement controlled the Co–Op's rights to cut trees and limited those rights to allow cutting only when certain conditions were present.  From the Co–Op's own admissions through its general manager, Odom, it is clear that the Co–Op went beyond the terms of the easements, and therefore, committed a trespass.  The jury's finding on the question of trespass was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

We reverse and remand for a new trial in accordance with this opinion.

---

12.  *Id.*

13.  *Caterpillar Tractor Co. v. Cropper,* 767 S.W.2d 813, 817 (Tex.App.—Texarkana), *writ denied, improvidently granted,* 777 S.W.2d 709 (Tex.1989).

