ROBERT J. DURESA *et al.*, Plaintiffs-Appellants, v. COMMONWEALTH EDISON COMPANY, a/k/a Com Ed, Defendant-Appellee.

First District (2nd Division) No. 1—03—0317

Opinion filed March 30, 2004.

Benjamin C. Duster and Emelda E. Estell, both of Chicago, for appellants.

Hoffman, Burke & Bozick, of Chicago (Paul E. Kelly and Shawn R. Burnett, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiffs Robert and Bonnie Duresa appeal from an order of the circuit court granting the motion of defendant Commonwealth Edison, also known as Com Ed, to reconsider its order denying both plaintiffs' motion for partial summary judgment and defendant's cross-motion for summary judgment, and granting summary judgment in favor of defendant. On appeal, plaintiffs contend that the trial court erred in granting summary judgment in favor of defendant because genuine issues of material fact existed as to the validity of the document under which defendant claimed it possessed an easement over plaintiffs' property, the amount of damage defendant caused to plaintiffs' property, and the reasonableness of defendant's conduct on plaintiffs' property. For the reasons set forth below, we reverse and remand.

## STATEMENT OF FACTS

In 1990, plaintiffs purchased 3.77 acres of land at 1001 Plum Tree Road in Barrington Hills, Illinois. Situated on the property was an 1875 Victorian home, as well as many varieties of mature lilac bushes, honeysuckle, forsythia, and flowering privets. Cherry and mulberry

trees lined the 750-foot roadside. Over the next several years, plaintiffs restored the home and cleared overgrown brush and shrubbery from the property.

On October 14, 1997, plaintiffs filed a complaint for a temporary restraining order and other relief against defendant and the Village of Barrington Hills (Village),[1] alleging that on September 17 and 26 defendant erected two utility poles on plaintiffs' property that resulted in extensive damage to the property. Specifically, defendant erected a new 50-foot pole 16, although a 35-foot pole 16 already existed on the property and apparently still remained at the time of the proceedings below and, in doing so, defendant destroyed four 5-foot flowering privets. Defendant also replaced a 35-foot pole 13 with a 50-foot pole 13 and, in doing this, defendant gouged a 21-foot native cherry tree (which later died), destroyed two 4- to 5-foot flowering privets, and removed five 15- to 18-foot Ludwig Spaeth lilac trees. Plaintiffs sought to enjoin defendant from replacing any additional poles without their consent and to prohibit defendant from entering their property. On the same day, plaintiffs received a letter from defendant's project design supervisor, enclosing an alleged easement granted to it by a predecessor in interest to plaintiffs' property, which, according to defendant, authorized its activities on plaintiffs' property. The easement was dated September 1, 1934, and was signed "A. Cowles by John L. Weaver." The easement granted to defendant's predecessor in interest "the right, permission and authority to construct, maintain, and renew 'pole line equipment' *** and also to trim, from time to time, such trees, bushes and ____ [sic] as may be reasonably required for the construction and efficient operation of said 'pole line equipment.' "

On October 16, the trial court entered an order, in which the parties agreed that poles 14 and 15 would be relocated three feet closer to the street, that the relocation would not require extensive tree trimming, and that defendant was to restore plaintiffs' landscaping upon completion of the work. The next day, defendant replaced poles 14 and 15 with 50-foot poles. In constructing pole 14, defendant destroyed five 15- to 18-foot lilac bushes. In erecting pole 15, defendant destroyed four 15- to 18-foot lilac bushes and a native cherry tree. Also, a mulberry tree subsequently died due to damage caused by defendant's activities.

On February 6, 1998, plaintiffs filed an amended complaint, alleging that defendant, contrary to the provisions of the October 16 order,

---

[1]The Village's motion to dismiss the count of plaintiffs' complaint against it was granted and the Village is not a party in this appeal.

removed numerous trees and caused other extensive damage during the replacement of the poles and that a controversy existed as to whether defendant possessed a valid easement. According to plaintiffs, the easement was invalid since it was not signed by the property owner and was not recorded. After defendant's subsequent motion to dismiss plaintiffs' amended complaint was granted, plaintiffs filed a second amended complaint, alleging that defendant only possessed a prescriptive easement, which it exceeded. Plaintiffs asked the court to order defendant to remove the four 50-foot poles and to restore the trees and shrubbery it had destroyed.

On April 6, 2000, plaintiffs filed their answers to defendant's notice to produce and interrogatories in which they included numerous photographs and stated that defendant chopped down many rare and irreplaceable lilac bushes, other trees, and privets with respect to work surrounding five pole areas: 13, 14, 15, 16, and 16A. According to plaintiffs, defendant also scorched the earth in these areas. Plaintiffs attached various consultation reports with respect to the damage done and replacement or damage estimates.

On August 15, plaintiffs filed a motion for a restraining order, asking the court to prohibit defendant from again entering their property for the purpose of tree trimming after they received a postcard from defendant indicating its intent to undertake trimming on the property. On August 17, the trial court granted the motion, prohibiting defendant from entering plaintiffs' property between that date and August 30, unless an emergency situation existed. On October 4, the trial court entered an order, after the parties had met on the property for an inspection, authorizing defendant to trim one tree.

On April 25, 2002, plaintiffs filed a motion for partial summary judgment, arguing that there was no genuine issue of material fact as to the easement's validity because it was not signed by the property owner or recorded. On June 11, defendant filed a cross-motion for summary judgment, arguing that it possessed an express grant of an easement and that the document was admissible and genuine under the ancient document rule. Attached to this motion was the easement, as well as a copy of Cowles' will in which he gave Weaver $500, and a bill sent by Weaver (an attorney) to Cowles' estate for services rendered in an unrelated matter. Defendant argued that the tree trimming and replacement of the poles were authorized under the easement. In response to defendant's cross-motion, plaintiffs argued that genuine issues of material fact existed regarding the extent of the alleged easement, what damages were caused by defendant's conduct, and the amount of damages caused by defendant. On July 25, defendant replied, arguing that the amount of damages was only an is-

sue if defendant did not have the authority to do the work, which it did. On September 5, the trial court entered an order, stating that the there was "significant disagreement" between the parties as to whether defendant possessed a valid easement, which precluded summary judgment in either party's favor. The court therefore denied both motions.

On September 30, plaintiffs filed a motion to reconsider the September 5 order, stating that the easement was invalid because defendant failed to present evidence that Weaver was Cowles' agent. On October 9, defendant filed a motion to reconsider the September 5 order, arguing that the easement was valid because it was an ancient document.

On December 23, the trial court entered an order, stating that the issue was whether defendant possessed a valid easement. According to the court, defendant had presented sufficient evidence that it possessed a valid easement and, moreover, that equitable principles rested with defendant. Accordingly, it denied plaintiffs' motion to reconsider, granted defendant's motion to reconsider, and granted defendant's motion for summary judgment. This appeal followed.

## ANALYSIS

■ Initially, we note that defendant moved to strike portions of plaintiffs' appellate brief as violative of Supreme Court Rule 341 (188 Ill. 2d R. 341). We took this motion with the case. We now deny defendant's motion to strike plaintiffs' brief, but we note that we will disregard any inappropriate materials contained therein.

Plaintiffs first contend that the trial court erred in granting summary judgment in defendant's favor because the document defendant relied upon as granting an easement over plaintiffs' property was signed by someone (John Weaver) other than the property owner (A. Cowles) at the time of the alleged easement and defendant failed to present evidence of any agency relationship between Weaver and Cowles. According to plaintiffs, the trial court erred in deciding fact questions with respect to agency issues in finding the easement valid. Plaintiffs also contend that the trial court erred in granting summary judgment because genuine issues of material fact existed regarding the amount of damage caused by defendant to plaintiffs' property and the reasonableness of defendant's conduct on their property, i.e., did defendant's conduct constitute misuse or exceed the boundaries of the easement.

Defendant contends that, under the ancient document rule, the admissibility and genuineness of the easement is presumed, and it need not demonstrate direct proof of execution or authority to do so

by an agent. Defendant further contends that the easement must be sustained under principles of equity, particularly given the fact that plaintiffs had notice of the easement since poles were in existence on their property. Defendant also contends that we must disregard those arguments with respect to remaining fact questions because plaintiffs failed to comply with Supreme Court Rule 191 in that they attached no affidavits to their motion for partial summary judgment and failed to cite authority, thus waiving these issues for review. Additionally, according to defendant, plaintiffs did not raise the issue of damages until their response to defendant's cross-motion for summary judgment, which was an improper time. Alternatively, defendant contends that even if plaintiffs did not waive review of these issues, no fact questions existed. According to defendant, it demonstrated, based on the easement, that it had authority to undertake the activities it did on plaintiffs' property, that it was required to "trim or remove trees" that may interfere with its power lines under the National Electric Safety Code,[2] and that the trimming it did was necessary.

We initially note that defendant's argument that plaintiffs raised the issue of damages only in response to defendant's cross-motion for summary judgment, which was an improper time, is illogical. Plaintiffs only raised the validity of the easement in their motion for partial summary judgment; plaintiffs did not raise any other issues, including the issue of damages. Thereafter, defendant sought summary judgment on all issues. It was only at this time that other issues, *e.g.*, the reasonableness of defendant's conduct and damages, became viable issues with respect to summary judgment.

Additionally, we note that both parties have failed to cite to pertinent authority, which they could have, either from Illinois, other jurisdictions, or legal periodicals, despite the fact that there is a plethora of same. Specifically, plaintiffs clearly have not researched the law on the ancient document rule or, if they have, they continue to ignore it. Similarly, plaintiffs have failed to cite to pertinent law on the interpretation of easements and uses thereof, despite the fact that there is not only general law in Illinois, but case law in other jurisdictions factually and directly on point. Likewise, defendant has failed to offer any authority as to why the ancient document rule applies to an *unrecorded easement*. Clearly, the two cases it relies upon, which we need not address, involved *deeds*, at least one of which was *recorded*. Similarly, defendant ignores the nature of the ancient document rule,

---

[2]We find this argument disingenuous given the fact that the trees, shrubs, and plantings were not trimmed or removed because they interfered with defendant's lines.

as discussed below, and argues that simply because there is an ancient document rule, the easement at issue here must be deemed valid and binding and, based on the easement, defendant can do anything it desires *vis-a-vis* plaintiffs' property. We do not condone the laxity of either party's counsel and could dismiss this appeal on this basis alone. However, because we are of the opinion that this case involves important issues, we choose to address them. *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11, 672 N.E.2d 1178 (1996) (waiver is a limitation on the parties, not on the court).

■ Our standard of review is well settled:

> " "The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence which was not available at the time of the hearing, changes in the law or errors in the court's previous application of existing law. [Citation.] As a general rule a motion to reconsider is addressed to the trial court's sound discretion. [Citation.] But a motion to reconsider an order granting summary judgment raises the question of whether the judge erred in his previous application of existing law. Whether the court has erred in the application of existing law is not reviewed under an abuse-of-discretion standard.' [Citation.]
>
> As with any question regarding the application of existing law, we review the denial of such a motion *de novo.* [Citation.]" *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.*, 318 Ill. App. 3d 571, 577, 742 N.E.2d 829 (2000).

See also *O'Connor v. County of Cook*, 337 Ill. App. 3d 902, 911, 787 N.E.2d 185 (2003) (stating that we review "the trial court's application of law to the facts presented before it on a *de novo* basis").

■ Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2000); *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335, 775 N.E.2d 987 (2002). The right to relief must so clearly favor the movant that no fair-minded person could dispute the movant's right to judgment in its favor. *Southern Illinoisan v. Department of Public Health*, 319 Ill. App. 3d 979, 986, 747 N.E.2d 401 (2001). In other words, the movant's entitlement to judgment must be clear and free from doubt. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986); *Turner Investors v. Pirkl*, 338 Ill. App. 3d 676, 681, 789 N.E.2d 323 (2003). "Our function on an appeal from the grant of summary judgment is limited to determining whether the trial court correctly found that no genuine issue of material fact existed and, if that was the case, whether the trial court correctly entered judgment as a matter of law." *General*

*Casualty Co. of Illinois v. Carroll Tiling Service, Inc.*, 342 Ill. App. 3d 883, 889, 796 N.E.2d 702 (2003).

## A. Ancient Document Rule

■ "At common law, a document purporting to be 30 or more years old is generally admissible in evidence without the ordinary requirements as to proof of execution and authenticity, as long as it is produced from proper custody and is on its face free from suspicion, and circumstances exist which corroborate its authenticity." 29A Am. Jur. 2d *Evidence* § 1201, at 645 (1994). The presumption of authenticity, however, is rebuttable. 29A Am. Jur. 2d *Evidence* § 1201, at 645. "Where an ancient instrument purports to have been executed under a power of attorney issuing from an individual, and the elements of proper custody and freedom from suspicion are shown, the instrument is admissible in evidence without further proof either of the genuineness of the execution or the existence of the power." 29A Am. Jur. 2d *Evidence* § 1206, at 647; 18 Ill. L. & Prac., *Evidence* § 238, at 509 (2003); 2 J. Strong, McCormick on Evidence § 223, at 46 (5th ed. 1999). See also *Reuter v. Stuckart*, 181 Ill. 529, 542, 54 N.E. 1014 (1899) (concluding that the trial court did not err in admitting a deed without proof of execution of a power of attorney authorizing the attorney to execute the deed). "The ancient document rule only dispenses with the need to present testimony to authenticate the document. It does not make it admissible as substantive or illustrative evidence." 3A C. Nichols, Illinois Civil Practice § 61:32, at 170 (2003); 18 Ill. L. & Prac., *Evidence* § 237, at 508 (2003); *People ex rel. Adams Electrical Cooperative v. Village of Camp Point*, 286 Ill. App. 3d 247, 255, 675 N.E.2d 1371 (1997). See also 2 J. Strong, McCormick on Evidence § 223, at 46-47 (5th ed. 1999) (stating that the ancient document rule is merely a rule of authentication, the satisfaction of which does not necessarily guarantee the admission of the writing authenticated). "The admissibility of such evidence remains a matter within the trial court's discretion." *Adams Electrical Cooperative*, 286 Ill. App. 3d at 256.

■ Plaintiffs' sole objection to the easement here is the failure of defendant to show that Weaver was an agent of Cowles and, therefore, had authority to grant the easement. It is clear from the above authority, however, that such proof is not required. See also *Loughran v. Orange & Rockland Utilities, Inc.*, 209 A.D.2d 917, 918, 619 N.Y.S.2d 200, 201 (1994) (concluding that an unrecorded easement, signed by an agent of the landowner, where the utility company failed to produce evidence that the agent had authority to sign the easement, was nonetheless binding against the subsequent purchasers since they had "sufficient actual or constructive notice of the use and interest" of the

utility company). Moreover, although defendant presented no authority that an unrecorded easement falls within the ancient document rule, our independent research has disclosed at least one case, albeit from another jurisdiction, that has done so. In *Louden v. Apollo Gas Co.*, 273 Pa. Super. 549, 417 A.2d 1185 (1980), the court concluded that a chancellor was correct in admitting a 1900 unrecorded "Memorandum of Agreement" (easement), giving the defendant the right to "lay *** lines of pipe *** over and through [the plaintiff's] land," as an ancient document. *Louden*, 273 Pa. Super. at 551, 417 A.2d at 1186. In the instant case, because the other requirements of the ancient document rule are undisputedly met—it was more than 30 years old, it was in proper custody, and, on its face, it is free from suspicion—defendant was not required to present evidence to authenticate the document to render it admissible into evidence. This does not mean, however, that it was automatically admissible as a matter of law as substantive evidence. Rather, such admission would be within the trial court's discretion.

We find that the trial court did not abuse its discretion in admitting the easement as substantive evidence. Our independent research has disclosed cases from other jurisdictions that have admitted an unrecorded easement into evidence against a subsequent purchaser of the property at issue. In *Citgo Petroleum Corp. v. Florida East Coast Ry. Co.*, 706 So. 2d 383 (Fla. App. 1998), in imputing knowledge of an unrecorded easement to a subsequent purchaser of property (the defendant) over which an easement had been granted, the court concluded that the subsequent purchaser had constructive notice of the easement based on the plaintiff's "actual, open, and obvious possession by construction of a conspicuous pipeline" that placed the defendant landowner on notice of the plaintiff's easement. *Citgo*, 706 So. 2d at 386. Similarly, in *Florida Power & Light Co. v. Rader*, 306 So. 2d 565 (Fla. App. 1975), the defendant power company filed condemnation proceedings to acquire an easement over the plaintiff's property where the defendant had constructed electric lines and poles. *Rader*, 306 So. 2d at 566. The defendant had originally entered upon the plaintiff's property in 1944 and constructed its power equipment pursuant to a "valid but unrecorded written easement from the then owner of the property." *Rader*, 306 So. 2d at 566. Although the trial court had concluded that the easement was ineffectual against the plaintiff, the *Rader* court disagreed on the basis that the plaintiff testified he had observed the lines and poles on his property. *Rader*, 306 So. 2d at 567. According to the *Rader* court, "[a]ctual, open and obvious possession is constructive notice to all the world of whatever right the occupant has in the land, and puts upon inquiry those acquir-

ing any title to or lien upon the land so occupied to ascertain the nature of the rights the occupant has in the premises." *Rader*, 306 So. 2d at 567.

In *Keinz v. Niagara Mohawk Power Corp.*, 41 A.D.2d 431, 343 N.Y.S.2d 963 (1973), the plaintiffs filed a lawsuit against the defendant for wrongful trimming and cutting of trees and vegetation on their property. *Keinz*, 41 A.D.2d at 431, 343 N.Y.S.2d at 964. The defendant had acquired an easement to trim and cut trees and other obstructions likely to interfere with its lines from the plaintiffs' predecessor in interest. *Keinz*, 41 A.D.2d at 432, 343 N.Y.S.2d at 965. The trial court concluded that because the alleged easement documents had not been acknowledged, attested to, or recorded, they were not binding on the plaintiffs. *Keinz*, 41 A.D.2d at 432, 343 N.Y.S.2d at 965. The superior court disagreed, stating "[t]here is abundant authority that a grant of an easement by an instrument which is unacknowledged and unattested may nevertheless support equitable rights and interests in property which, when established by possession and improvements, are effective against a subsequent purchaser of the servient estate who takes with actual knowledge of the possession and improvements." *Keinz*, 41 A.D.2d at 433, 343 N.Y.S.2d at 966. Because the plaintiffs in *Keinz* had actual knowledge of the defendant's possession, the court concluded that the trial court erred in refusing to admit and consider the alleged easement documents and reversed and remanded for a new trial. *Keinz*, 41 A.D.2d at 434, 343 N.Y.S.2d at 967-68. See also *Loughran*, 209 A.D.2d at 918, 619 N.Y.S.2d at 201 (discussed above); *Louden*, 273 Pa. Super. at 555, 417 A.2d at 1188 (concluding that the plaintiff should be imputed with constructive knowledge of the unrecorded easement because he knew gas lines ran though his property, and he had visually observed other gas-related objects as well as marker lines on his property); *Pallone v. New York Telephone Co.*, 34 A.D.2d 1091, 1091, 312 N.Y.S.2d 660, 660 (1970) (an unrecorded easement to place poles on the plaintiffs' property was valid as against the plaintiffs where the plaintiffs had, at least, constructive notice, based on the open and visible use of the property by the defendant).

The only case we have discovered to the contrary is *Continental Telephone Co. of the West v. Blazzard*, 149 Ariz. 1, 716 P.2d 62 (App. 1986). In that case, the plaintiff telephone company sued the defendant landowners for interference with its efforts to lay buried telephone lines on the defendants' property. *Blazzard*, 149 Ariz. at 2, 716 P.2d at 63. The plaintiff relied upon a 1957 easement given to its predecessor by the then-owner of the property. However, the owner's wife had not signed the easement, it was not notarized, and it had not been recorded. *Blazzard*, 149 Ariz. at 3, 716 P.2d at 64. The *Blazzard* court

concluded that the easement was not binding on the defendants because the defendants, "as subsequent purchasers of the property, had no notice of the document (which was found in telephone company files), [and thus] it could not serve to create an easement running with the land in favor of the telephone company." *Blazzard*, 149 Ariz. at 5, 716 P.2d at 66.

Clearly, the weight of the persuasive authority finds that an unrecorded easement—as an ancient document or otherwise—is binding against a subsequent purchaser, such as plaintiffs here. We see no reason to depart from this view. Plaintiffs here admitted that they were aware of defendant's utility poles on their property and, thus, they had constructive knowledge of defendant's easement.

Accordingly, we find that the easement was admissible against plaintiffs under the ancient document rule and conclude that, based on their constructive notice, the easement was binding on them. This does not end our analysis, however; the scope of the easement must be ascertained.

## B. Scope of Easement

■ Although not set forth by the parties here, the rules with respect to easements are well established. "A grant of an easement is to be construed in accordance with the rules applied to deeds and other written instruments. In the construction of instruments creating easements, it is the duty of the court to ascertain and give effect to the intention of the parties." 28A C.J.S. *Easements* § 57, at 235 (1996). See *McMahon v. Hines*, 298 Ill. App. 3d 231, 236, 697 N.E.2d 1199 (1998). Courts tend to strictly construe easement agreements so as to permit the greatest possible use of property by its owner. *McMahon*, 298 Ill. App. 3d at 236-37. "The extent of an easement created by express grant depends on the terms of the grant. If it is specific in terms, it is decisive of the limits of the easement." R. Wald, *Extent of Easement Over Servient Estate*, 33 Proof of Facts 2d 669, 677 (1983). See *Consolidated Cable Utilities, Inc. v. City of Aurora*, 108 Ill. App. 3d 1035, 1041, 439 N.E.2d 1272 (1982). In other words, "[i]f the language of a grant is clear and free from doubt, such language is not the subject of interpretation, and no resort to extrinsic facts and circumstances may be made to modify the clear terms of the grant." F. Chen, Annotation, *Extent and Reasonableness of Use of Private Way in Exercise of Easement Granted in General Terms*, 3 A.L.R.3d 1256, 1260 (1965).

■ "Where an easement exists by express grant, its use must be confined to the terms and purposes of the grant." 28A C.J.S. *Easements* § 160, at 370 (1996). If an easement is limited in scope or purpose, the property owner is entitled to prevent the burden of the

easement from being increased. *Consolidated Cable Utilities, Inc.*, 108 Ill. App. 3d at 1040. "Whether a misuse or overburdening of the easement has occurred typically depends on how the easement was acquired." J. Buchwalter, *What Constitutes, and Remedies For, Misuse of Easement*, 111 A.L.R.5th 313, 338 (2003). "[N]o precise rule can be stated as to when the use by the owner of the servient or dominant estate is a reasonable use as distinguished from an unreasonable use[;] it is a question of fact to be determined from the facts and conditions prevailing." *McMahon*, 298 Ill. App. 3d at 239-40. Where the extent of an easement is exceeded or misused, the dominant owner becomes a trespasser (R. Wald, *Extent of Easement Over Servient Estate*, 33 Proof of Facts 2d at 681 (1983)) and liable for damages resulting from the improper use (28A C.J.S. *Easements* § 169, at 387-88 (1996)).

Keeping the above principles in mind, we must ascertain the scope of the easement at issue here to determine whether defendant was entitled to summary judgment. The easement provides, in pertinent part, that defendant has "the right \*\*\* to *trim*, from time to time, such trees, bushes and _____ [sic] as may be reasonably required for the construction and efficient operation of said 'pole line equipment.' " (Emphasis added.) The language of the easement is clear and, thus, it controls. The express and specific terms of the easement limited defendant's authority to *trimming* of trees and bushes only. The trimming must also be reasonably necessary. Trim means "to reduce by removing excess or extraneous matter"; to "cut away matter to lessen the size of"; or "to take off or away by or as if by cutting, clipping, or lopping." Webster's Third New International Dictionary 2445 (1993). Defendant's conduct cannot be reasonably or logically deemed trimming within the meaning of that term. What defendant did here was to entirely remove, cut down, or destroy trees and bushes. It is abundantly clear that there is nothing in the easement about removal, destroying, or cutting down of trees and bushes. Defendant's conduct therefore exceeded the scope of the explicit terms of the easement. Although plaintiffs argue that a fact question exists as to whether defendant's conduct constituted a misuse or exceeded the boundaries of the easement, we do not agree that a fact question exists as to this matter since, based on the clear language of the easement, defendant did not have authority to cut down or remove trees or bushes.

Our conclusion is further supported by case law from other jurisdictions, although not controlling, addressing the scope of trimming and removal of trees by utility companies pursuant to an express easement. In *DeWitt County Electric Cooperative, Inc. v. Parks*, 1 S.W.3d 96 (Tex. 1999), the defendant utility company cut down two trees located within an easement on the plaintiff's property and

trimmed another that had grown into the easement. *DeWitt County Electric Cooperative*, 1 S.W.3d at 98. Although the easement at issue allowed the utility not only the ability to place, construct, etc., utility lines and poles, and also gave it the "right to clear the right-of-way of all obstructions, to cut and trim trees within the right-of-way *** and to cut down from time to time all dead, weak, leaning, or dangerous trees that are tall enough to strike the wires in falling," the plaintiff filed a lawsuit against the utility company for damages. *DeWitt County Electric Cooperative*, 1 S.W.3d at 99 n.1. The *DeWitt* court noted that where, "as here, an easement is created by an express grant, the scope of the easement holder's rights must be determined by the terms of the grant." *DeWitt County Electric Cooperative*, 1 S.W.3d at 103. According to the Texas Supreme Court, the easement "unambiguously gave the utility the right to cut the trees at issue." *DeWitt County Electric Cooperative*, 1 S.W.3d at 98. In concluding the utility was authorized to cut down the trees, the court stated that "[a]s a matter of law, the easement permitted the Cooperative to remove those trees either because they were 'obstructions' or because they were 'within the right-of-way.' " *DeWitt County Electric Cooperative*, 1 S.W.3d at 101.

In *Murphy v. Fannin County Electric Cooperative, Inc.*, 957 S.W.2d 900 (Tex. Ct. App. 1997), the plaintiff landowners brought a trespass, negligence, and gross negligence action against the defendant utility company after the utility company entered their property and cleared brush and tree limbs; specifically, the utility cut down and poisoned 352 trees. *Murphy*, 957 S.W.2d at 903. The property was subject to two unrecorded easements granted by the plaintiffs' predecessor in interest. *Murphy*, 957 S.W.2d at 902. The easements allowed the utility to "cut and trim trees to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling." *Murphy*, 957 S.W.2d at 903. According to the *Murphy* court, "[t]he test in this case is whether the Co-Op exceeded its rights under the easements granted to the Co-Op." *Murphy*, 957 S.W.2d at 903. Because the easement at issue did not authorize poisoning, the court concluded that the plaintiffs were entitled to a finding of trespass and, because the issue of damages was not determined, the cause would be remanded. *Murphy*, 957 S.W.2d at 903. With respect to the utility's cutting down of trees on the property, despite the fact the defendant was authorized to do so, the *Murphy* court noted that the evidence demonstrated it was not necessary to cut down some of the trees, and that the cutting of very large trees to the ground was far below the heights necessary to protect power lines. *Murphy*, 957 S.W.2d at 905. According to the *Murphy* court:

"It is undisputed that the Co-Op cut to the ground over three hundred trees on the Murphys' property. It is also undisputed that an easement controlled the Co-Op's rights to cut trees and limited those rights to allow cutting only when certain conditions were present. From the Co-Op's own admissions *** it is clear that the Co-Op went beyond the terms of the easements, and therefore, committed a trespass." *Murphy*, 957 S.W.2d at 907.

In *Mosely v. Massachusetts Electric Co.*, No. CA 932353 (April 12, 1996), the court found that although the defendant electric company had authority to cut and remove 87 trees from a strip of land owned by the town adjacent to the plaintiff landowner's property, it did not have authority to cut down 13 trees on the plaintiff's property and, in doing so, committed trespass, rendering it liable to the plaintiff for damages.

In *Kell v. Appalachian Power Co.*, 170 W. Va. 14, 289 S.E.2d 450 (1982), the plaintiff landowners filed a lawsuit against the defendant power company to prohibit it from chemically spraying their property to kill vegetation. *Kell*, 170 W. Va. at 16, 289 S.E.2d at 452. The plaintiffs' predecessors in interest had, in 1939, granted the defendant an easement over the property, which allowed the defendant to remove any trees, branches, or obstructions that might endanger the safety or interfere with the use of poles, wires, etc. *Kell*, 170 W. Va. at 15 n.1, 289 S.E.2d at 451 n.1. In order to determine whether the defendant had a right to chemically spray the property, the *Kell* court noted that it had "to consider the general rights of parties to easement agreements such as the 1939 indenture, the general rules of construction applied to such indentures, and the nature of the activity here involved." *Kell*, 170 W. Va. at 16, 289 S.E.2d at 453. In this regard, the *Kell* court noted that the defendant, in being granted the easement, did "not acquire a fee interest in the land," nor "have a right to exclusive possession of [the] right-of-way conveyed." *Kell*, 170 W. Va. at 16-17, 289 S.E.2d at 453. Specifically, the *Kell* court stated that "[a] power company *** in exercising [its] right of entry, may not inflict unnecessary damage on the land," nor may it "unreasonably increase the burden placed upon the servient tenement." *Kell*, 170 W. Va. at 17, 289 S.E.2d at 454. In the case before it, the *Kell* court concluded:

"[T]he power company clearly has the right under the common law principles discussed above, and under the 1939 indenture, to enter upon the Kells' land to cut and remove trees, overhanging branches or other obstructions which pose a danger to, or interfere with the effective operation of, the power company's equipment located upon that land. The power company's rights are not, however, unlimited. The power company must not inflict unneces-

sary damage to the land nor may its exercise of its right unreasonably increase the burden placed on the servient tenement." *Kell*, 170 W. Va. at 17, 289 S.E.2d at 454.

The *Kell* court further stated:

> *"The power company cannot indiscriminately wreak havoc upon the owner's land and its appurtenances in order to exercise its limited right to protect its lines from danger and hindrance from overhanging branches and trees."* (Emphasis added.) *Kell*, 170 W. Va. at 20, 289 S.E.2d at 456.

In construing the 1939 easement, the *Kell* court noted that the intent of the parties was controlling and that, in the case before it, the spraying of herbicides was unknown in 1939. *Kell*, 170 W. Va. at 19, 289 S.E.2d at 456. As such, according to the court, "[i]t was clearly not the intention of the parties to allow the power company to destroy all living vegetation within the area sprayed or adjoining areas where these deadly herbicides could drift. Such action is not necessary to the protection of the power company's equipment." *Kell*, 170 W. Va. at 19, 289 S.E.2d at 456. The *Kell* court concluded that the 1939 easement did not authorize the power company to apply herbicides. *Kell*, 170 W. Va. at 20, 289 S.E.2d at 457.

In *Stirling v. Dixie Electric Membership Corp.*, 344 So. 2d 427 (La. App. 1977), the plaintiffs filed a lawsuit against the defendant electric company for damage to their trees, shrubs, and plants after the defendant used a chemical spray to maintain its right-of-way. *Stirling*, 344 So. 2d at 428. The defendant had been granted an easement to cut and trim trees and shrubs to the "extent necessary to keep them clear of [its] electric line *** and to cut down from time to time all dead, weak, leaning or dangerous trees." *Stirling*, 344 So. 2d at 428. The plaintiffs argued that the easement did not grant the defendant the right to use chemicals, to which the *Stirling* court agreed. *Stirling*, 344 So. 2d at 428. Specifically, the *Stirling* court stated that "[t]he application of the chemical was indiscriminate, without regard to the height or proximity of any plant, tree or shrub to the line," and "[w]e do not believe that the use of a chemical here was permissible under the circumstances. The vast majority of trees and shrubs were not a threat to the electrical line nor [did the defendant] claim that they were." *Stirling*, 344 So. 2d at 429. According to the *Stirling* court, it

> "would be more sympathetic to defendant's cause had any effort been made to minimize the damage or even consider the use of mechanized equipment. *** Plaintiffs' carefully landscaped front yard was accorded no greater consideration than an ordinary fence row." *Stirling*, 344 So. 2d at 429.

As such, the *Stirling* court awarded damages to the plaintiffs. *Stirling*, 344 So. 2d at 429.

In *McGuire v. Central Louisiana Electric Co.*, 337 So. 2d 1070 (La. 1976), the plaintiff sued the defendant for wrongful cutting and trimming of trees on the plaintiff's property, which the defendant had done based on an easement granted to it by the plaintiff's predecessor. *McGuire*, 337 So. 2d at 1071. The easement allowed the defendant to "cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling." *McGuire*, 337 So. 2d at 1071-72. In construing the easement, the *McGuire* court noted that the language of the easement controlled, and concluded:

> "The contract in the instant case expressly limits the width of the present servitude to ten feet, and in our opinion is not ambiguous. The contractual language delineating the servitude follows the language authorizing its holder to cut and trim vegetation and by its position indicates the parties' intention that these accessory rights be exercised only within the servitude boundaries." *McGuire*, 337 So. 2d at 1072.

The *McGuire* court further concluded that because the defendant cleared more property than it was entitled to clear under the easement, it had an obligation "to repair, insofar as reasonably possible, the damage caused by that entry" and pay damages as well for the removal of the plaintiff's trees. *McGuire*, 337 So. 2d at 1073.

In *Marshall v. Georgia Power Co.*, 134 Ga. App. 479, 214 S.E.2d 728 (1975), the plaintiff sued the defendant for cutting down Christmas trees on his property located within an easement granted to the defendant in 1925 by the plaintiff's predecessor that gave the defendant authority to trim and remove trees and underbrush that would interfere with or endanger its power line or operation thereof. *Marshall*, 134 Ga. App. at 479, 214 S.E.2d at 729-30. The *Marshall* court concluded that the defendant had the right to clear the trees, but did not have the right to damage other lands of the plaintiff's in doing so. *Marshall*, 134 Ga. App. at 481, 214 S.E.2d at 730. In this regard, the court stated that "[w]hile the easement grants the right of entry, it does not provide for the indiscriminate violation of plaintiff's property rights in so doing." *Marshall*, 134 Ga. App. at 481, 214 S.E.2d at 731.

In *Moore v. Choctawhatchee Electric Co-Operative, Inc.*, 196 So. 2d 788 (Fla. App. 1967), the plaintiffs filed a lawsuit against the defendant after it cleared a large strip of the plaintiffs' land. *Moore*, 196 So. 2d at 789. The defendant claimed it was entitled to do so under an unrecorded easement granted to it by the plaintiffs' predecessor, which gave the defendant the right to cut and trim trees and shrubbery to

the extent necessary to keep them clear of its lines. The plaintiffs had no knowledge of the easement. *Moore,* 196 So. 2d at 789. The *Moore* court noted that, even assuming the defendant had an easement over the property and the plaintiffs had constructive notice of it, "the unrecorded easement clearly authorize[d] the cutting and trimming of trees and shrubbery only to the extent necessary to keep them clear of said electric line." (Emphasis omitted.) *Moore,* 196 So. 2d at 789. According to the court, "[s]uch language does not in and of itself vest in defendants as a matter of law the right to clear a 30-foot swarth, which was the width of the clearing as alleged and proved by plaintiffs." *Moore,* 196 So. 2d at 789. See also *Muehl v. Niagara Mohawk Power Corp.,* 198 A.D.2d 692, 693, 603 N.Y.S.2d 356, 357 (1993) (the defendant utility company's cutting down of trees on the plaintiff's property under an unrecorded easement granted to it from a previous property owner, giving it authority "to cut, trim and remove, from time to time, any trees, brush or other obstructions along [its power] lines which may in the opinion of the Company *** be necessary for proper and efficient operation," was found proper where the plaintiff failed to "offer any evidence that the trees were trimmed to an excessive or unnecessary degree" so as to have exceeded the easement's grant); *Crowell v. Florida Power Corp.,* 438 So. 2d 958, 959 (Fla. App. 1983) (concluding that, even assuming the defendant had consent to enter upon the plaintiff's property, a genuine issue of material fact existed as to whether the defendant violated the boundaries of the consent by trimming the trees in the manner it did); *Hanner v. Duke Power Co.,* 34 N.C. App. 737, 738, 239 S.E.2d 594, 595 (1977) (the plaintiff property owners could not recover against the defendant power company which had cut down trees on the plaintiffs' property where an easement expressly granted the defendant the right to clear trees that could strike its power lines); *Fitzgerald v. Knapp Brothers, Inc.,* 33 Conn. Supp. 752, 753, 370 A.2d 621, 622-23 (1976) (where the defendant had the right to trim trees on the plaintiff's property within a certain area and did so without affecting the health or ability of the trees to survive and its conduct did not adversely affect the beauty or aesthetic quality of the plaintiff's property, the plaintiff was not entitled to damages); *Mall v. C.&W. Rural Electric Co-Operative Ass'n,* 168 Kan. 518, 523, 213 P.2d 993, 997 (1950) (even though trees cut down by the defendant were within its right-of-way, the defendant's conduct in cutting down the trees was unnecessary for the maintenance of its repair line where the easement gave the defendant authority to cut down only those trees that were dead, weak, or leaning and in danger of striking its wires).

■ Although the instant case is different from most of those

detailed above because, in those cases, the utility company was specifically granted the right to cut down or remove trees in addition to the right to trim, the cases are nonetheless instructive on the issue of when conduct falls within or exceeds the scope of an easement based on the specific language of the relevant easement. As in *DeWitt*, although there, as a matter of law based on the express language of the easement, the defendant had authority to cut down trees, defendant here, as a matter of law, had no right to cut down, remove entirely, or destroy trees and bushes pursuant to the express grant of the easement. The language of the easement here expressly limited defendant's conduct—defendant only had authority to trim trees. Most importantly, as in *Murphy*, defendant here exceeded the express grant of authority to it and this matter therefore must be remanded for a determination of the amount of damages it owes to plaintiffs.

Based on the foregoing, we conclude that while the trial court property concluded that defendant possessed a valid easement that was binding on plaintiffs, the trial court erred in granting summary judgment in favor of defendant because, under the explicit language of the express easement, defendant exceeded the scope of authority granted to it.

## CONCLUSION

For the reasons stated, we reverse the judgment of the circuit court of Cook County and remand this cause for further proceedings consistent with this order.

Reversed and remanded.

CAHILL and GARCIA, JJ., concur.